**STATE ex rel. Honorable Timothy D. O'LEARY, Presiding Judge, 16th Judicial Circuit, et al., Relators,**

**v.**

**MISSOURI STATE BOARD OF MEDIATION et al., Respondents.**

No. 58336.

Supreme Court of Missouri, En Banc.

April 8, 1974.

Rehearing Denied May 13, 1974.

Harry P. Thompson, Jr., Richard W. Noble, Kansas City, for relators; Shughart, Thomson & Kilroy, Kansas City, of counsel.

William A. Jolley, Jolley, Walsh, Gordon & Staab, Kansas City, Daniel C. Rogers, Chairman, Missouri State Board of Mediation, Jefferson City, for respondents.

MORGAN, Judge.

In this original proceeding, relators seek to prohibit the Chairman of the Missouri State Board of Mediation from entertaining, either voluntarily or in compliance with an alternative writ of mandamus issued by the Circuit Court of Cole County, Missouri, a petition filed by a union, the Western Missouri Public Employees Local 1812, wherein said union seeks to establish that it has majority representative status with certain employees of the Juvenile Division of the Jackson County Circuit Court and is entitled to be designated as the appropriate bargaining unit for said employees under the provisions of Sections 105.500 to 105.530, RSMo 1969, V.A.M.S. Jurisdiction is in this court by virtue of an order of transfer, entered after opinion, by

the Kansas City District of the Court of Appeals. Mo.Const. Art. V, § 10, V.A.M. S.

Relators include the Presiding Judge of the Sixteenth Judicial Circuit of Missouri (Jackson County), the designated Juvenile Judge of said circuit and the employed Director of Juvenile Court Services for said county.

Respondents include the Missouri State Board of Mediation, the Chairman thereof, and the Judge of the Circuit Court for Cole County.

The statutory sections noted are captioned, generally, with the designation: "Labor Organizations."

Section 105.510, provides, in part, that: "Employees * * * of any public body [with certain exceptions not of interest herein] shall have the right to form and join labor organizations and to present proposals to any public body relative to salaries and other conditions of employment through the representative of their own choosing."

Section 105.500(3), under definitions, provides that " 'Public body' means the state of Missouri, or any officer, agency, department, bureau, division, board or commission of the state, or any other political subdivision of or within the state."

Section 105.520 provides: "Whenever such proposals are presented by the exclusive bargaining representative to a public body, the public body or its designated representative or representatives shall meet, confer and discuss such proposals relative to salaries and other conditions of employment of the employees of the public body with the labor organization which is the exclusive bargaining representative of its employees in a unit appropriate. Upon the completion of discussions, the results shall be reduced to writing and be presented to the appropriate administrative, legislative or other governing body in the form of an ordinance, resolution, bill or other form required for adoption, modification or rejection."

Section 105.530, in part, provides that the rights conferred shall not "be construed as granting a right to employees covered in sections 105.500 to 105.530 to strike."

Factually, it appears that on January 1, 1969, the Juvenile Judge entered an "Order" establishing detailed personnel practices and policies for the employees of Juvenile Court Services for Jackson County. "Courtroom" employees were not covered by said order nor is it suggested that they, as well as others specified, are to be affected by the outcome of this litigation. The order is before us as an exhibit, and, in so far as of interest here, it established a Personnel Practices Committee composed of eleven employees of Juvenile Court Services, elected by the employees. The agreed function of the committee was to receive, review and present grievances of staff members, relative to employer-employee relations, to the Director of Juvenile Court Services.

Thereafter, Local 1812 began an organizational campaign among the employees and on February 3, 1972, asked for recognition as the exclusive bargaining representative for them under the statutory provisions noted. Whether or not the success of the campaign was due to the organizational skill of the union representative or the dissatisfaction of the employees with the court's personnel plan is not reflected in the record. In any event, the request was denied and Local 1812 filed a petition with the respondent board of mediation seeking a designation of said employees as an "appropriate bargaining unit" and certification of Local 1812 as the "bargaining representative." Upon the board's failure to act, Local 1812 sought and was granted an Alternative Writ of Mandamus by the Circuit Court of Cole County requiring the board to process the petition or show cause why it had not done so. Relators, thereafter, initiated the present action in the Court of Appeals, Kansas City District, and the opinion of that court includes a finding that: "The majority of this court

are of the opinion that it is within the jurisdiction of respondent State Board of Mediation to adjudicate the issues presented by the petition of Local 1812 and that the writ of mandamus of respondent judge which directs such action should be given effect * * * We are troubled, however, by the anomaly of a procedure which would subject courts, trial and appellate alike, to adjudications of a subordinate tribunal. It offends the common law concept of ordered jurisdiction—firmly embedded in our jurisprudence by constitutional provision (Art. V, §§ 1, 2 and 4)—that the State Board of Mediation should be empowered to determine rights of courts which supervise the judgments and jurisdiction of that administrative tribunal." Such conclusions were reached after consideration had been given to a question—which the court framed as follows: "The single legal issue posed by the pleadings is whether the mandate of respondent judge directs an exercise of jurisdiction by respondent State Board of Mediation which is an encroachment by the legislative branch upon the separate magistracy of the judicial department of government in violation of Article II, § 1 of the Missouri Constitution." The parties by written briefs and oral arguments have tended to focus on that issue to sustain their respective positions.

■ We are convinced that any approach to the problem initially must give recognition to that fundamental issue which stems from one question, i. e., are public employees who work within the judicial department of government to be accorded those constitutional rights enjoyed by other public employees? Absent some compelling reason to the contrary, the answer must be "yes."

In so far as of interest here, this court has considered such "rights" in several cases involving public employees. Prior to the enactment of the statutory provisions being considered, this court in City of Springfield v. Clouse, 356 Mo. 1239, 206 S.W.2d 539 (1947), clearly delineated the distinction between the right of all citizens "to peacefully assemble and organize for any proper purpose, to speak freely and to present their views and desires to any public officer or legislative body" and the right of "collective bargaining" as that term is usually understood in the private sector and which contemplates a binding contractual obligation being placed on the employer. (1. c. 542). Therein, the court found no prohibition against public employees exercising the first right noted—to organize and present their views—through union membership, subject, however, "to some regulation for the public welfare." (1. c. 542). See also King v. Priest, 357 Mo. 68, 206 S.W.2d 547 (1947), and Glidewell v. Hughey, 314 S.W.2d 749 (Mo. banc 1958).

Thereafter, the statutory provisions now in question were enacted and later considered in light of City of Springfield v. Clouse, supra, and found to be constitutional in State ex rel. Missey v. City of Cabool, 441 S.W.2d 35 (Mo.1969). Therein it was said, 1. c. 41:

"Relator and plaintiff employees of Cabool are also protected in the rights granted by and sought under Sections 105.500 to 105.530, supra, by constitutional principles recognized in Missouri prior to enactment of the statute in that 'All citizens (public officers included) have the right, preserved by the First Amendment to the United States Constitution and Sections 8 and 9 of Article I of the 1945 Missouri Constitution * * * to peaceably assemble and organize for any proper purpose, to speak freely and to present their views and desires to any public officer or legislative body.' City of Springfield v. Clouse, 356 Mo. 1239, 206 S.W.2d 539, 542 [1]. See also Shelton v. Tucker, 364 U.S. 479, 481–487, 81 S.Ct. 247, 5 L.Ed.2d 231.

"[2–5] Sections 105.500 et seq., supra, do not purport to give to public employees the right of collective bargaining guaranteed by Section 29, Article I, of the 1945 Constitution to employees in private industry and in the sense that term is usually known with its attendant connotation of unfair labor practice for refusal by the

employer to execute and adopt the agreement produced by bargaining, Brotherhood of Painters, etc., Local 1385, 143 NLRB 678, 680, and the use of strike as a bargaining device constitutionally protected to private employees, Div. 1287 Amalgamated Assn. of St. Elec. Ry. and Motor Coach Emp. of America v. State of Missouri, 374 U.S. 74, 83 S.Ct. 1657, 10 L.Ed.2d·763, but expressly denied by Section 105.530, supra, to public employees. The act does not constitute a delegation or bargaining away to the union of the legislative power of the public body, and therefore does no violence to City of Springfield v. Clouse, supra, 206 S.W.2d 1. c. 543 [4], 545–546 [8, 9], because the prior discretion in the legislative body to adopt, modify or reject outright the results of the discussions is untouched. The public employer is not required to agree but is required only to 'meet, confer and discuss,' a duty already enjoined upon such employer prior to the enactment of this legislation. City of Springfield v. Clouse, supra, 1. c. 542–543 [1–3]. The act provides only a procedure for communication between the organization selected by public employees and their employer without requiring adoption of any agreement reached. For discussion of similar enactments, see Kurt L. Hanslowe, The Emerging Law of Labor Relations in Public Employment, New York State School of Industrial and Labor Relations, at Cornell University, ILR Paperback No. 4, October, 1967.

"[6, 7] The general assembly is presumed to be aware of existing declarations of law by the supreme court when it enacts law on the same subject, Mack Motor Truck Corp. v. Wolfe, Mo.App., 303 S.W.2d 697, 701 [5]; Jacoby v. Missouri Valley Drainage Dist., 349 Mo. 818, 163 S.W.2d 930, 938 [8]; and, without indication to the contrary the general assembly must have had the intent to enact this legislation in accord with constitutional principles previously enunciated in City of Springfield v. Clouse, supra, and reiterated in Glidewell v. Hughey, Mo., 314 S.W.2d 749. For these reasons, it is constitutional."

In view of the continuing and rather exhaustive consideration heretofore given this subject by this court, little could be gained by seeking to compare or distinguish the many out-of-state cases cited by the parties. Nevertheless, we do observe that the conclusions reached by this court are consistent with those in American Federation of State, Co., & Mun. Emp. v. Woodward, 406 F.2d 137 (C.C.A. 8th Cir. 1969), wherein the court, reference public employment, said at 1. c. 139: "Union membership is protected by the right of association under the First and Fourteenth Amendments." See also Peters et al. v. Board of Education of Reorganized School District No. 5 of St. Charles County Missouri, 506 S.W.2d 429 (Mo.1974),—(handed down February 11, 1974). Furthermore, it would appear fair to mention with favor that the chief legal officer for the state, the Attorney General, has during the period of interest noted issued several advisory opinions consistent with the cases cited and the conclusion reached herein.

May such rights be accorded employees of the judicial department under the procedures outlined in Sections 105.500 to 105.-530?

Relators contend they cannot because the Board of Mediation has no jurisdiction to designate a "bargaining unit" or a "representative" for such unit within the judicial department. Arguments to sustain this contention are detailed at length in the briefs offered, but they may be summarized fairly as follows: (1) Section 105.-525 "on its face does not apply to courts or their functions," and (2) Processing of the petition by respondent board would constitute an invasion and interference with the powers of the judicial department in violation of the doctrine of separation of powers contained in the 1945 Mo.Const., Art. II, § 1. In this connection, relators rely generally on State on inf. Danforth v. Banks, 454 S.W.2d 498 (Mo. banc 1970) and State ex rel. Weinstein v. St. Louis County, 451 S.W.2d 99 (Mo. banc 1970). Respondents, in answer thereto, submit that the designated employees of the Juve-

nile Court Services are employed by a "public body" as that term is used in Section 105.510; and, that compliance with the statutory procedure now challenged would not cause an encroachment upon the powers of the judiciary nor violate the doctrine of separation of powers because: "It could not be clearer from this language [Section 105.520] that the power of the public employer, in this case the court, is left totally unfettered by the public employee labor statutes. What more power to control its employees could the court want than the power to adopt, modify or totally reject the proposals presented to it by its employees?"

As to the first point, we believe that the questioned employees are employed by a "public body" as that term is used in Section 105.510. As heretofore set out, Section 105.500(3) first declares that the term—public body—means the state of Missouri. Thereafter, in the disjunctive, the statute lists "any officer, agency, department, bureau, division, board or commission of the state" plus "any other political subdivision" of the state. The employees of the Juvenile Court are paid compensation either by the state of Missouri or county of Jackson (a political subdivision), and we cannot ignore the plain language of the statute which includes such employees in either event. If that governmental unit which pays the compensation of such persons is ignored, and they are in a strict sense considered solely employees of the judiciary, the same result would prevail. This, for the simple reason that the state of Missouri—in so far as the "powers of government" are concerned—is divided into three distinct departments, of which the judicial department is one. Art. II, § 1, Const.Mo.1945. Compare Hawkins v. Missouri State Employees' Retire. Sys., 487 S.W.2d 580 (Mo.App.1973).

Since the statutory provisions, facially, do apply to the employees in question, we next consider whether or not implementation of the same would constitute an invasion of the judicial department so as to be constitutionally violative of the separation of powers doctrine. We do not believe that it would. In reaching this conclusion, we have sought to anticipate, from a practical and admittedly somewhat mechanical standpoint, what the statutory scheme in question will call for any or all of the parties doing.

First, the statute allows the employees to exercise their recognized constitutional right to organize and select a representative to present their views to their employer. The record indicates that they have selected Local 1812 to perform that task. Failure of relators to accept that fact left the employees and their supposedly chosen representative two alternatives, i. e., (1) abandon the constitutional right delineated in Clouse, supra, or (2) adopt the approach now statutorily outlined. They selected the latter, and there are only two questions before the board of mediation at this time: One is an issue as to whether or not Local 1812 has been designated by a majority of the employees as their representative. On this point, relators could have little legitimate interest. The second issue involves whether or not the employees have such mutual and related interests that they properly can be designated as an appropriate bargaining unit. As to the latter issue, relators could have some interest. For instance, "courtroom" employees, and others we need not specify, could perform such unique and specialized duties that issues and rights pertaining to the "bargaining unit" might not be relevant or available to them. However, in the case before us no such objection has been made by relators reference the employees in question. Nevertheless, if such had been true Section 105.525 provides for an appeal from any decision of the board of mediation to a judicial body—including the Circuit Court of Jackson County. It requires a rather strained approach to classify such a procedure as an "invasion" of the judicial department, since it can make the final decision in the first instance, or at such later date, if changed circumstances might call for adding or withdrawing a particular employee from the designated bargaining unit. Of the three departments of government,

the judicial certainly cannot evidence less interest in protecting the constitutional rights of citizens—including its own employees—than do the other two departments of government. To those who would suggest that such a worthy objective was met and satisfied by relators when they created the grievance committee in the order noted, it is sufficient to point out that the employees apparently did not agree.

Second, a question arises as to whom the designated representative will present the employees' cause. Section 105.520 allows for the selection of a "designated representative" by and for the employer. Although it is not for this court to make such a selection, and we do not, it appears that the Director of Juvenile Court Services is presently performing such duties under relators' original order and the statute would allow him to continue in that capacity. Upon "completion of discussions" between the two representatives, the "results" are to be reduced to writing and presented to the appropriate governing body for *adoption, modification* or *rejection*.

■ Third, a question arises to what governing body such "results" should be presented. The answer, relative to the employees with whom we are now concerned, may be found in State ex rel. Weinstein v. St. Louis County, supra, wherein this court said, 1. c. 102 of 451 S.W.2d: "We are of the opinion that within the inherent power of the Juvenile Court of St. Louis County, subject to the supervisory control of the Circuit Court of St. Louis County (Art. V, §§ 4, 15 and 28, Const. of Mo., 1945, V.A.M.S.; § 478.063, RSMo 1959, V.A.M.S.; and State ex rel. MacNish v. Landwehr, 332 Mo. 622, 60 S.W.2d 4), is the authority to select and appoint employees reasonably necessary to carry out its functions of care, discipline, detention and protection of children who come within its jurisdiction, and to fix their compensation. In order that the Court may administer justice under the Juvenile Code, it is essential that it control the employees who assist it."

Nothing in the statutory procedure herein considered has the ultimate effect of challenging or detracting from that holding; and the Juvenile Judge, subject to the supervisory power of the Circuit Court, qualifies as the governing body relative to the employees herein involved.

Lastly, we do comment on the difference of opinion, expressed by the parties, as to the extent, if any, this court limited its holding in Weinstein, supra, in State ex rel. Judges, Etc. v. City of St. Louis, 494 S.W.2d 39 (Mo. banc 1973). This writer as the author of the latter opinion is free to say the answer is—absolutely none. In Weinstein, supra, the court said, 1. c. 102 of 451 S.W.2d: "Of course, such inherent power in the judicial department should be exercised only on occasions where necessary personnel and facilities are not provided by *conventional methods.*" (Emphasis added.) The question in Judges, Etc., supra, was limited solely to whether or not conventional methods had failed in that particular instance.

Of greater importance is the fact that both cases reflect an appreciation of one ultimate truth, i. e., that "government" can be more efficient and responsive when the three departments thereof realize that a cooperative approach to problems of mutual concern is not per se violative of the separation of power doctrine.

■ We do not believe that the statutory scheme herein considered justifies the apprehension expressed by the Court of Appeals. Judicial concern of possible abuse does not warrant striking down a statute otherwise constitutional. However, if experience shows otherwise, the problem can be solved at that time.

Our preliminary writ of prohibition heretofore issued should be quashed, and it is so ordered.

DONNELLY, C. J., and SEILER, BARDGETT, HENLEY and FINCH, JJ., concur.

HOLMAN, J., dubitante.