A. A. WEBER, Appellant,

v.

MISSOURI STATE HIGHWAY COMMIS-SION, Canon Drainage District, Holt County, Missouri, County Court of Holt County, Missouri, and Fortescue Special Road District, Respondents.

No. 63655.

Supreme Court of Missouri, Division No. 2.

Oct. 12, 1982.

Harry P. Thomson, Jr., Dennis D. Palmer, Jennifer A. Gille, Shughart, Thomson & Kilroy, Kansas City, for appellant.

Bruce A. Ring, Chief Counsel, Dennis J. Redel, Asst. Counsel, Mo. Highway and Transp. Com'n, Jefferson City, for respondents.

ALDEN A. STOCKARD, Senior Judge.

Appellant A. A. Weber appealed to the Missouri Court of Appeals, Western District, a trial court dismissal of two of the four counts of his petition for declaratory and injunctive relief. By Count I appellant requested the court to order the State Highway Commission to resume control of and to repair and maintain Route J–111 in Holt County. By Count IV appellant sought a declaratory judgment that regulations adopted by Holt County pursuant to § 231.441, RSMo 1978, for the expenditure of funds received under the County Aid Road Trust Fund (CART) were invalid. These were the two counts that were dismissed. The trial court's judgment for defendants on Counts II and III is not questioned on this appeal. Count II alleged that the failure of defendants Holt County Court and Fortescue Special Road District to maintain Route J–111 as it was turned over to them constituted a breach of the contract between themselves and the Commission. Count III alleged that defendants Holt County Court and Fortescue Special Road District had, through their neglect, created a public and private nuisance.

The court of appeals transferred the cause to this Court because Count IV involved construction of a revenue statute. [*Weber v. State Highway Commission*, 625 S.W.2d 954 (Mo.App.1981), prematurely published prior to transfer.] We have exclusive jurisdiction. Art. V, § 3, Mo. Constitution.

This Court will review the entire record upon both law and evidence, determining credibility, weight, and value of oral testimony and other evidence in the case, and making its own determination of the facts, although giving due deference to findings of the trial court, when proper, and judgment based on such findings will not be set aside unless clearly erroneous. *Craft v. Politte*, 454 S.W.2d 534 (Mo.1970). Rule 73.01.

The facts necessary for resolution of this cause were ably set out in the court of appeals opinion. Therefore, we borrow from the opinion without benefit of quotation marks.

Appellant Weber is a landowner in Holt County. Part of his 1700 acres adjoins and is served by Route J–111, which is an asphalt road running from Forest City approximately five miles west and then turns north for about three and one-half miles. There are five bridges on this route, designated as T–1 through T–5. T–1 is the bridge farthest west from Forest City, and T–5 is the bridge closest to that city. The Commission maintained Route J–111 as a part of the State Highway system from the 1930's until 1972 when it was released to Holt County. Bridge T–5 had been released to Holt County in 1968.

In 1966 the Canon Drainage District adopted a plan of reclamation which was presented to the circuit court of Holt County and thereafter approved. The evidence reveals that all parties concerned, including the Highway Commission, the Drainage District, Fortescue Special Road District within Holt County, and Holt County itself, agreed that the planned reclamation would likely damage bridges T–1 and T–5. In fact, it seems to have been agreed that bridge T–1 was in bad shape before the danger from the reclamation plan was considered. It had been damaged and was repaired by the Commission in the early 1960's and thereafter the Commission had received recommendations that it be replaced as it did not meet state standards. However, possibly as many as a third of the bridges in the state system fell into this category in 1967. Bridge T–5 was determined to be in even worse condition than T–1. Because of this, in 1968 the Commission would subsequently approve the replacement of bridge T–5, but at standards below that required by the Commission for state highways because it was turning the bridge over to the County.

In 1966 the Drainage District petitioned the Commission for relief from replacing bridge T–1, but this was denied by the Commission. During this hearing, the engineer for the Drainage District suggested that if Route J–111 could be abandoned by the Commission, that would alleviate the Drainage District's problem.

In 1967 the district engineer of the Commission advised the Commission that because of the proposed drainage district work it would be necessary to reconstruct bridges T–5 and T–1 and that an agreement should be made that Route J–111 be transferred upon the completion of a new state road, Route E–159. In October 1967 the Commission executed a written contract by which it agreed to transfer Route J–111 with bridges T–1 through T–5 to Holt County and the Fortescue Special Road District within Holt County after the completion of Route E–159. They in turn agreed to maintain the road. Approximately five miles were to be under County control and three and a half miles under the control of the Road District.

At the time, the County's sources of revenue for road maintenance and repair included County Aid To Road Tax (CART) funds, a separate special property levy for road repairs and some revenue sharing funds. The County allocated the CART funds for road gravel and some bridge repair. The property tax fund and whatever revenue sharing funds were available were used for

purchase of bridge steel and lumber, maintenance on road graders, diesel fuel, and labor. The Commission had made no attempt to determine if the County or the Road District would be financially able to maintain J–111 as an asphalt road. Neither the County nor the Road District maintained any other asphalt roads at the time, all County roads were either dirt or gravel. The County had informed the Highway Commission of this.

Route E–159 was completed in November 1972, and the Highway Commission turned over responsibility for J–111 at that time. Since the Commission relinquished control of J–111, there has been only minimal maintenance performed by either the County or the Road District and the road has become filled with potholes. Bridge T–1 is still in danger of collapse. No surplus funds exist to maintain the road as an asphalt road or to repair the bridge. Appellant has sought unsuccessfully to have the Commission agree to resume maintenance and control of J–111, and failing that, he filed this suit.

Appellant contends in his first point on this appeal that the State Highway Commission abused its discretion in contracting with Holt County and the Fortescue Special Road District to transfer Route J–111 and its five bridges because the evidence established that the Commission knew the Canon Drainage District's plan would endanger the condition of bridge T–1, but it agreed to the transfer in order to accommodate the Drainage District. Furthermore, appellant contends that the Commission knew that the County and the Road District would be unwilling or unable to maintain J–111 as an asphalt road.

■ The State Highway Commission has authority over and power to locate, relocate, design, and maintain all state highways. Art. IV, § 29, Mo. Const. In performing that function, the Commission exercises legislative discretion and finds the necessary facts by its own methods, which are not subject to judicial review or control because the location and design of highways are matters of policy which are committed solely to the discretion of the Commission. *State ex rel. State Highway Commission v. Weinstein,* 322 S.W.2d 778 (Mo. banc 1959). Such intervention in the absence of a pleading of facts showing bad faith or a manifest abuse of the authority vested in the Commission would amount to judicial usurpation of an exclusively legislative function clearly beyond the constitutional powers of courts. *State v. Elliott,* 326 S.W.2d 745, 750 (Mo. banc 1959).

■ We conclude that a decision on the part of the Highway Commission to relocate through traffic to Route E–129 and cease maintenance of J–111 does not constitute a manifest abuse of authority nor show the existence of bad faith. The fact that the decision was advantageous for the Drainage District does not alone render it an abuse of discretion in light of the surrounding circumstances. The Commission had the option of abandoning J–111 rather than turning it over to the County and the Road District. The Commission did arrange to have the bridge which was in the worst shape, T–5, replaced before turning it over to the County. The other bridge in question, T–1, like all too many in the state, does not meet state standards, but it has been functional since the turnover.

We cannot conclude that these facts evidence a manifest abuse of discretion or bad faith on the part of the Commission.

Appellant's first point is denied.

Appellant next contends that the requirement by Holt County that landowners provide half the cost of road repairs before making CART funds available exceeds the statutory authority granted to Holt County to administer the CART Fund Program.

■ Section 231.441, RSMo 1978, the County Aid Road Fund statute, provides that:

1. All moneys received by a county from the county aid road trust fund shall be used within the county solely for the construction, reconstruction, maintenance and repairs of roads, bridges and highways as the county court shall direct. The county court shall formulate by writ-

ten regulations, rules and policies for the use of such funds which shall be kept on file by the county recorder for public inspection. The state highway commission shall have no authority to promulgate rules or regulations concerning the expenditure of such funds and all such rules and regulations heretofore promulgated shall be null and void.

2. The state treasurer by the tenth day of each month shall remit to the county treasurer of each county its allocated share of the county aid road trust fund.

Clearly, the statute leaves the formulation of specific policies for the use of CART funds to the discretion of the individual county.

■ We are mindful that in construing a statute we may take into consideration statutes involving similar or related subject matter when such statutes shed light upon the meaning of the statute being construed. *State ex rel. Spink v. Kemp,* 365 Mo. 368, 283 S.W.2d 502 (1955). This is so even though the statutes are found in different chapters and were enacted at different times. *State ex rel. Schwab v. Riley,* 417 S.W.2d 1 (Mo.1967).

We find the practice of having county courts accept citizen donations for the purposes of maintaining public roads and then appropriating and paying out a like amount for the work from the county road funds is well established in Missouri. Section 229.-080, RSMo, provides:

Whenever any citizen or citizens of any county shall subscribe any sum not less than fifty dollars, for the purpose of grading, tiling, ditching or surfacing any portion of any public road in such county, and shall deposit the same with the county treasurer of such county, the county court may appropriate and pay out of the road funds of the county a like amount for the same purpose. The amount so subscribed shall be paid out only for such work as shall be designated by the subscribers thereof, and shall be expended under the direction and supervision of the county highway engineer.

■ Construing the two statutory provisions together, we cannot conclude, at least when we take into consideration the limited resources available to the County, that the matching funds regulation is an abuse of discretion.

Appellant further contends that this matching fund requirement violates the Equal Protection Clause of the Missouri Constitution in that it discriminates against county landowners who cannot afford to provide matching funds. He argues that the effect of this requirement is to deny maintenance of county roads to landowners who cannot raise money for the repair of those roads.

■ Generally, the function of governmental police power has been held to promote health, welfare, and safety of people by regulating all threats either to comfort, safety, and welfare of a populace or harmful to the public interest. *Craig v. City of Macon,* 543 S.W.2d 772 (Mo.1976). The Equal Protection Clause as it applies to the exercise of police power only requires that classifications established pursuant to such power be reasonable and bear a rational relation to the ends of the enactment. *Id.*

The scarcity of road funds in general made adequate maintenance for the approximately 500 miles of county road problematical even *with* landowner participation. *Without* these matching funds, the services which the County could alone provide could adequately benefit even fewer citizens. The County's policy of requiring landowners to apply for CART funds by donating their own funds for a match can be seen as an attempt to equitably distribute limited resources to the widest possible segment of the community, a rational way to spread the gravel—and the money— around.

Furthermore, the record indicates the availability of a separate county road tax fund and, at times, revenue sharing funds for road maintenance. While the total amounts available have never been large, more than one source did exist. Therefore, the CART fund was not the only recourse

available to landowners for road repair. Maintenance, while minimal, was not absolutely foreclosed if a landowner could not contribute to the fund.

Therefore, we conclude this policy does not violate the Equal Protection Clause.

The judgment is affirmed.

WELLIVER, P.J., and HIGGINS and SEILER, JJ., concur.