STATE ex rel. William L. WEBSTER, Attorney General, Relator,

v.

The Honorable James F. McHENRY, Judge of the 19th Judicial Circuit Division I, Respondent.

No. WD 37512.

Missouri Court of Appeals, Western District.

Sept. 16, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 4, 1986.

Application to Transfer Denied Dec. 16, 1986.

William L. Webster, Atty. Gen., Henry T. Herschel, Deborah Neff, Asst. Attys. Gen., Jefferson City, for relator.

William M. Barvick, Jefferson City, for respondent.

Before CLARK, C.J., and SHANGLER and NUGENT, JJ.

## ORIGINAL PROCEEDING IN PROHIBITION

SHANGLER, Judge.

This original proceeding in prohibition arises out of a suit for damages by a prison inmate for the loss of fingers of the hand from the use of a power saw while at work at the furniture factory of the Missouri State Penitentiary. The inmate Brown joined as defendants the State of Missouri, Donald Wyrick as warden of the prison facility, and Rockwell International, Inc., as manufacturer of the power saw. The petition alleged a separate ground of tortious conduct against each defendant. The recovery against Rockwell International, Inc., was on the theory of strict liability in tort: the sale to the State of Missouri of a power saw in a defective condition and unreasonably dangerous when put to an anticipated use, in that [among other defects] the saw did not have an adequate guard to protect the hands of a user. The recovery against the State of Missouri was on the theory of negligence: that the State maintained property [the power saw] in a dangerous condition, and with notice of the danger exposed the inmate to the unreasonable risk of harm entailed by its use. The recovery against Wyrick was on the theory of personal and *respondeat superior* negligence: that the warden failed to correct the known defect, and to order subordinate employees and inmates to discontinue use of that dangerous property.

The State of Missouri moved to dismiss the petition on the assertion of sovereign immunity. The motion was denied. The State of Missouri and warden Wyrick then moved for summary judgment on assertions of sovereign immunity and official immunity. The motion was attended by the affidavits of warden Wyrick and of Don LeMond, Manager of the Risk Management Section of the Division of General Services, Office of Administration. Wyrick attested that his official duty entailed only the security of the penitentiary, a duty which did not encompass the maintenance or management of the furniture factory. LeMond attested that neither the State of Missouri nor the Department of Corrections had purchased insurance against liability from the use of state-owned property of that kind, nor are they self-insured against the contingency of injury from such use. The court granted

summary judgment to the defendant Wyrick, but refused summary judgment to the State of Missouri on the ground, expressly, that

> There exists a factual issue as to whether the State of Missouri has a self-insurance plan within the meaning of Subsection 537.610.1, RSMo 1978.

■ Thereupon, the State of Missouri applied for our writ to prohibit the circuit judge from proceeding further against the defendant State of Missouri in the suit for damages by the inmate Brown, then pendent in that court. Our writ of prohibition issued under the rationale of *State ex rel. State of Missouri Department of Agriculture v. McHenry*, 687 S.W.2d 178 (Mo. banc 1985) that sovereign immunity connotes not only immunity from judgment but also immunity from suit, so that upon preliminary proof of an immunity defense as a matter of law, presumptively demonstrated, a writ may issue at discretion.

The pleadings to the preliminary rule in prohibition formulate the single issue: whether certain statutory enactments constitute a plan of self-insurance of the sovereign against liability for the maintenance of the dangerous condition of property the petition alleges against the State of Missouri. The points and argument presented to us, however, introduce other contentions, pro and contra, on the essential issue our writ probes: whether, under the allegations of pleading and the supplemental proofs tendered for summary judgment, the doctrine of sovereign immunity bars the cause of action by the inmate against the State of Missouri as a matter of law. Our opinion responds to the range of contentions—although not strictly joined as pleaded issues—because the statutes which declare the immunity of the sovereign from liability and suit for negligence and the waiver by the sovereign of immunity in the enumerated instances [injury from the dangerous condition of the property of the public entity, among them] are inextricable, and so bear on a definitive response.

To facilitate that response, we need only trace the uncertain morphosis of the doctrine of sovereign immunity, with attention to *August 4, 1983*—the date the inmate petition alleges the casualty befell.

*Jones v. State Highway Commission*, 557 S.W.2d 225 (Mo. banc 1977) abrogated, by judicial opinion, the doctrine of sovereign immunity as to all claims arising on or after August 15, 1978. The legislature responded by reinstitution of the immunity, except that the immunity was waived as to injury from the negligent operation of motor vehicles by state employees within the scope of employment, and injury caused by the dangerous condition of the property of a public entity. § 537.600, RSMo 1978. Section 537.610, RSMo 1978, enacted contemporaneously, permits the state and its subdivisions to purchase insurance and permits subdivisions to adopt a plan of self-insurance. Our supreme court en banc read these two provisions to mean that the waiver of immunity was only to the extent that the public entity had insured against such liability. *Bartley v. Special School District of St. Louis County*, 649 S.W.2d 864 (Mo. banc 1983). In 1985, the legislature enacted an amended § 537.600 to countermand the restrictive interpretation given to the waivers of immunity by *Bartley*, and to make explicit that the waivers of immunity [as to claims for damage for the negligent operation of motor vehicles and for the dangerous condition of publicly-owned property] were absolute regardless of any coincidence of liability insurance. The effect of this legislation, however, is not retrospective and so does not avail the claim of the inmate. The rule in *Bartley*, rather, appertains and there was no waiver of immunity as to the injury on August 4, 1983, from the dangerous condition of the state property the petition alleges—unless the sovereign was then insured against liability from the maintenance of that property. *Anderson v. State*, 709 S.W.2d 893, 895[4] (Mo.App.1986).

■ The inmate attempts to avoid *Bartley* by the contention that § 105.711 or, alternatively, predecessor § 105.710, constitutes a plan of self-insurance by the state. Section 105.710, the Tort Defense Fund,

was repealed and replaced by § 105.711, the State Legal Expense Fund. The effective date of the repeal and reenactment was September 28, 1983. The inmate examines and expounds § 105.711 to argue that the statute establishes a plan of self-insurance, and so under *Bartley*, perfects the waiver of sovereign immunity from a suit for damages for the dangerous condition of state property. That argument is not to the point, however, since the inmate was injured *before* § 105.711 came into effect, and that enactment is not retroactive. *State ex rel. Missouri Highway and Transportation Commission v. Appelquist*, 698 S.W.2d 883, 892 *et seq.* (Mo.App. 1985); *Anderson v. State*, 709 S.W.2d at 895[1].

█ The inmate then resumes with the argument that the Tort Defense Fund—§ 105.710—as subsistent in August of 1983, was a self-insurance plan effective under *Bartley* to implement the waiver of immunity as to a dangerous condition of state property. The statute had the purpose to indemnify the described *public officials* against final judgments for tortious acts "arising out of and performed in connection with their official duties on behalf of the state." It had no scheme to indemnify the *state* against judgments for tort. The statute ensured indemnity for a public officer whose tortious conduct caused injury to another while in the performance of an official duty—conduct not otherwise immune from suit and judgment under the doctrine of official immunity. *Jackson v. Wilson*, 581 S.W.2d 39, 44[4, 5] (Mo.App. 1979).

█ The inmate contends, nevertheless, that subsection 5 of the Tort Defense Fund [§ 105.710] subsistent at the time of the August, 1983 casualty, taken *in pari materia* with the successor Legal Expense Fund [§ 105.711] and sovereign immunity §§ 537.600 and 537.610 [as subsistent in August, 1983] constitute a plan of self-insurance in favor of the *state*—and so implements the waiver of sovereign immunity under *Bartley*.

It is so that the Legal Expense Fund makes express provision that the moneys appropriated to the fund *"be available for the payment of any claim or any amount required by any final judgment ... against* (1) *The state* of Missouri, or any agency thereof, pursuant to section 537.-600, RSMo; or (2) Any officer or employee of the state of Missouri...." [emphasis added] The Legal Expense Fund [§ 105.-711], however, did not replace the Tort Defense Fund until September 28, 1983, *after* the date the inmate alleges the casualty befell, and operates only prospectively. *State ex rel. Missouri Highway Commission v. Appelquist*, 698 S.W.2d at 892 *et seq.* Therefore, whatever otherwise the merit of the contention as to § 105.711 as a statute in operation, it does not avail a cause of action governed by the predecessor Tort Defense Fund.

It is so also that subsection 5 of the Tort Defense Fund, as operative in August of 1983, draws the state of Missouri and the doctrine of sovereign immunity into the context of the Tort Defense Fund enactment:

> To the extent the provisions of this section allow a monetary recovery against the state of Missouri, the doctrine of sovereign immunity is waived, but to no greater extent.[1]

That subsection means, simply: to the extent that the conduct of a person in the course of official duty—[conduct not otherwise subject to suit and judgment under the doctrine of official immunity]—becomes the basis of a suit in tort for damages against the state—*to that extent, the state waives immunity to judgment.* That subsection undertakes only *to waive sovereign immunity,* and *not to indemnify the sov-*

1. The original Tort Defense Fund was enacted in 1967, and subsection 5 was enacted as an amendment to the section on March 11, 1982. The entire Tort Defense Fund Section § 105.710 was repealed and replaced by § 105.711, the State Legal Expense Fund, effective September 28, 1983. Thus, subsection 5 lapsed after a brief life of about one year, but was operative in August of 1983, the date the inmate was injured.

*ereign*—even to the extent of the waiver. That is to say, subsection 5 of then subsistent Tort Defense Fund § 105.710 does not constitute a plan of self-insurance in favor of the state—that indispensible prerequisite *Bartley* imposes to implement a waiver of sovereign immunity under §§ 537.600 and 537.610, RSMo 1978. To the extent that § 105.710—through subsection 5—impinged on the waiver of sovereign immunity, moreover, that enactment came into *pari materia* with then extant sovereign immunity, exceptions and waiver § 537.600 and purchase of insurance/self-insurance plan § 537.610. The revisit of those sections that subsection 5 compels ends at the beginning: however the waiver of sovereign immunity is accomplished—whether categorically as in § 537.600, or incidentally as in subsection 5 of § 105.710—under the existent statutes, as *Bartley* determines, no such waiver can be effective unless the risk is insured against. We determine as a matter of law that subsection 5 of the Tort Defense Fund was not a scheme of self-insurance in favor of the sovereign, and so hold that the sovereign was immune from suit by the inmate.

The inmate argues, subsection 5 of the Tort Defense Fund aside, that there remained the issue whether the state of Missouri, *as a matter of fact,* had adopted a self-insurance plan to supplement the waiver of sovereign immunity as to injury from a dangerous condition of state property. The inmate does not explain, however, how that issue arises. The petition of the inmate acknowledges that Missouri is a sovereign state and that the state owned the property which injured the inmate. The petition then pleads that "either through the purchase of insurance as provided by Section 537.610, RSMo, or through the adoption of a plan of self-insurance for itself and its employees as provided by Section 537.610 and Section 105.711, RSMo" the state waived sovereign immunity to the injury suffered by the inmate. We have already determined that the State Legal Expense Fund—§ 105.711—was not in effect at the time of the injury alleged, nor was the 1983 amendment of § 537.600.

We have determined also that the Tort Defense Fund—§ 105.710—and not the successor State Legal Expense Fund, was effective on the date of the injury and that provision, as a matter of law, did not constitute a plan of self-insurance in favor of the sovereign. Thus, under *Bartley*—then the rule of decision—the inmate injury was not actionable. The inmate tendered no support, other than the petition itself, for the contention that *as of August 4, 1983,* the waiver of immunity by the state to suit of that ilk was implemented by insurance. The state of Missouri supplemented the motion for summary judgment with affidavits by Don LeMond, Risk and Insurance Manager of the Risk Management Section of the Division of General Services, Office of Administration. Those affidavits declare that the state of Missouri neither purchased liability insurance nor adopted a plan of self-insurance against the risk of injury from state-owned property. The inmate contests those affidavits because they "did not address the issue of the effect of sections 105.710 and 105.711 RSMo" and so "did not speak to the issue of the effect of the Legal Expense Fund and its predecessor, the Tort Defense Fund." The effect of those statutes as a scheme of self-insurance was a matter of statutory construction, and so, a matter of law. We have construed the statutes posed in argument, and have found against the contentions of the inmate. No question of fact remained on the pleaded petition and on the supplemental proofs on the motion for summary judgment that the suit by the inmate against the state was barred by the principle of sovereign immunity under *Bartley.*

The preliminary rule in prohibition is made absolute.

All concur.