**Clay F. CATES, Appellant,**

v.

**William L. WEBSTER, Respondent.**

No. 68382.

Supreme Court of Missouri,
En Banc.

April 14, 1987.

John B. Williams, County Counselor, Jay D. Haden, Legal Counsel, Kansas City, for appellant.

William L. Webster, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Appellant, a bailiff in the Associate Division of the Circuit Court of Jackson County, was named defendant in an action sounding in tort, styled *Wilton v. Cates* (hereinafter *Wilton*), in the Jackson County Circuit Court. Thereafter appellant filed this petition for declaratory judgment seeking a determination of his rights and respondent's responsibilities in the pending tort action under §§ 105.711 and 105.716, RSMo 1986. The trial court held that respondent, the Attorney General of Missouri, is not obligated to represent appellant in the tort action nor are moneys from the State Legal Expense Fund available for the payment of the claim or any amount required by a final judgment in that suit. The court found appellant was not an employee of an agency of the State of Missouri and the claim in *Wilton* did not involve appellant's conduct arising from and performed in connection with his official duties on behalf of an agency of the State of Missouri within the meaning of § 105.-711.2(2). Affirming, the Court of Appeals,

Western District, found § 105.711 inapplicable because the cause of action in *Wilton* arose prior to the enactment of that statutory section. Here on transfer the case is determined as though on original appeal. Mo. Const. art. V, § 10.

I.

From the stipulation of facts upon which the cause was submitted to the trial court and the record as a whole, the pertinent facts are these:

On June 10, 1982, David O. Wilton filed his petition in *Wilton*, seeking actual and punitive damages against appellant and Nancy Flanegin, a clerk-secretary in the Jackson County prosecuting attorney's office, for certain conduct of appellant and Flanegin on September 18, 1981, in the Jackson County Courthouse Annex. Wilton alleged that while at the prosecuting attorney's office attempting to file a complaint, appellant, "employed and working as a bailiff at the third floor Prosecutor's Office in Independence, Missouri, Jackson County Courthouse," and acting under Flanegin's direction, falsely imprisoned and unlawfully and offensively contacted Wilton.

Appellant, employed as bailiff in 1977 by the Sixth District Magistrate of Jackson County, Donald Benton, had been told by the judge that he would be in charge of the courtroom and all third-floor security. Having previously worked for Jackson County appellant knew he was required to live in the county. Benton was succeeded by Associate Circuit Judge James May, who told appellant that he would remain as bailiff and his duties would be the same as those prescribed by Benton.

Bailiffs are selected and hired by the associate circuit judges of the respective divisions, who set the duties, supervise the work and have the right to fire their bailiffs. Though bailiffs are subject to the personnel policies for employees of the circuit court, their positions are funded by the county treasury, including expenses for sal-

ary, medical and dental insurance, life insurance, social security employer contributions, workers compensation, employment security and a pension plan. In addition they may become members of the credit union serving Jackson County employees and their salary checks are issued by the county's division of finance and are signed by the county executive and the clerk of the county legislature. Deductions of social security and withholdings for state and federal income taxes are transmitted to the proper governmental agencies by the county's division of finance and that division maintains all records required by law on payroll matters, such as social security deductions and income tax withholdings. Workers compensation and employment security claims filed by bailiffs and other county-funded court personnel are handled by the county in the manner of claims filed by county employees not working for the court. Although bailiffs' salaries are paid by Jackson County, the court administrator prepares the budget to support circuit court operations, including salaries for bailiffs, and after the court en banc approves the budget, it is submitted to the county budget officer who in turn submits it to the county executive for transmittal to the county legislature. Pursuant to § 50.640, RSMo 1986, neither the budget officer nor the county legislature may alter the estimates of the circuit court without the consent of the court and the county is required to appropriate the amounts so submitted.

It is the policy of Jackson County to provide representation for county officials and employees when sued for acts arising out of and performed in connection with the exercise of the duties of their respective offices and to satisfy from county funds judgments entered against them.

As to lawsuits for money damages based on conduct arising from and performed in connection with official duties on behalf of the state, the Attorney General's office has represented those persons holding positions within the circuit court level of the judicial system whose salaries and fringe benefits are provided from state funds. These have included circuit judges, circuit clerks, deputy circuit clerks, court reporters for circuit courts, and juvenile officers. On the other hand the Attorney General has refused to represent those not compensated from state funds, such as deputy juvenile officers, and upon the filing of the petition in *Wilton*, though Jackson County requested that the Attorney General represent appellant, that office refused because appellant was not paid by the state and was therefore, in the view of respondent, not a state officer or employee under § 105.711.2(2).

The trial court determined that associate divisions of circuit courts are agencies of the state under the State Legal Expense Fund, but that appellant was not an employee of nor was he performing duties on behalf of the state or an agency thereof within the meaning of § 105.711.2(2).

The question is whether the trial court drew proper legal conclusions from the stipulated facts. *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979).

## II.

Generally, with some exceptions, expenditures accruing in the circuit courts are paid by the counties:

> All expenditures accruing in the circuit courts, except salaries and clerk hire which is payable by the state, except all expenditures accruing in the municipal divisions of the circuit court, and *except as otherwise provided by law*, shall be paid out of the treasury of the county in which the court is held in the same manner as other demands.

Section 476.270, RSMo 1986 (emphasis added). Appellant, represented by the office of the county counselor, contends in essence that the general rule of § 476.270 notwithstanding, Jackson County is responsible for neither the defense nor paying the claim in *Wilton* because by virtue of §§ 105.711 and 105.716 it has been "otherwise provided by law."

Section 105.711 is in pertinent part:

1. There is hereby created a "State Legal Expense Fund" which shall replace the "Tort Defense Fund" and which shall consist of moneys appropriated to the fund by the general assembly and moneys otherwise credited to such fund pursuant to section 105.716.

2. *Moneys in the state legal expense fund shall be available for the payment of any claim or any amount required by any final judgment rendered* by a court of competent jurisdiction *against*:

(1) The State of Missouri, or any agency thereof, pursuant to section 537.600, RSMo; or

(2) *Any officer or employee of the state of Missouri or any agency thereof,* including, without limitation, elected officials, appointees, members of state boards or commissions and members of the Missouri national guard *upon conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the state, or any agency thereof,* provided that moneys in this fund shall not be available for payment of claims under chapter 287, RSMo.

(Emphasis added.) In addition § 105.716.1 provides that "[a]ny investigation, defense, negotiation, or compromise of any claim covered by sections 105.711 to 105.726 shall be conducted by the attorney general."

Appellant can succeed only if: (1) he was an officer or employee of the state or any agency thereof; *and* (2) the claim is against conduct which arose out of and was performed in connection with his official duties on behalf of the state or any agency thereof.[1]

### III.

We first address respondent's contention that appellant is not entitled to the protection of §§ 105.711 and 105.716.1 because the events giving rise to *Wilton* and the filing of the petition in that case occurred prior to September 28, 1983, the effective date of the referenced statutory sections, and to hold otherwise would constitute retrospective application of those statutes in violation of Mo. Const. art. I, § 13.[2] *See generally Aherron v. St. John's Mercy Medical Center,* 713 S.W.2d 498, 502 (Mo. banc 1986); *Vaughan v. Taft Broadcasting Co.,* 708 S.W.2d 656, 660 (Mo. banc 1986); *State ex rel. St. Louis-San Francisco Ry. Co. v. Buder,* 515 S.W.2d 409, 410–11 (Mo. banc 1974). However, contrary to respondent's contention we conclude that affording appellant protection of these statutes does not involve a retrospective application.

Under § 105.711.2, moneys in the State Legal Expense Fund shall be available for the payment of any claim *or* any amount required by any final judgment rendered by a court of competent jurisdiction. Because the subsection specifies the rendering of any final judgment as one of the alternative "act[s] or transaction[s]," *State ex rel. St. Louis-San Francisco Ry. Co.,* 515 S.W.2d at 411, triggering an obligation to pay money on behalf of an employee, the protection provided the employee under the Fund arises when the claim is made and extends to the time when a judgment might be rendered. From this we must conclude the legislature broadly intended to include those claims not yet reduced to final judgment. In *Wilton,* no judgment has yet been reached thus application of § 105.711.2 to that case is not retrospective since the judgment, an act to which certain legal effects are ascribed by § 105.711.2, will transpire after the effective date of the statute. It necessarily

---

1. Because of our holding *infra* that appellant was not an officer or employee of the state or any agency thereof, it will be unnecessary for us to consider, if he were such an employee, whether the claim against him in *Wilton* was made upon his conduct arising out of and performed in connection with his official duties on behalf of the state or any agency thereof.

2. "That *no* ex post facto law, nor *law* impairing the obligation of contracts, or *retrospective in its operation,* or making any irrevocable grant of special privileges or immunities, *can be enacted.*" Mo. Const. art. I, § 13 (emphasis added).

follows that application of § 105.716 to *Wilton* does not give retrospective force to the statute. To the extent that prior cases, *e.g., State ex rel. Webster v. McHenry,* 719 S.W.2d 849, 852 (Mo.App.1986); *Anderson v. State,* 709 S.W.2d 893, 895 (Mo.App. 1986); *State ex rel. Missouri Highway & Transp. Comm'n v. Appelquist,* 698 S.W.2d 883, 895–96 (Mo.App.1985), hold that application of §§ 105.711–.726, RSMo 1986, to claims arising prior to the effective date of those statutes is a retrospective application even where the final judgment is rendered after the effective date, those decisions are not to be followed.

## IV.

■ Next, we consider appellant's contention that the trial court erred in holding he was not an employee of an agency of the state within the meaning of § 105.711.-2(2). Appellant maintains he is an employee of the Circuit Court of Jackson County, which the trial court found to be an agency of the state, and therefore is an employee of an agency of the state within the meaning of the subsection. In arguing that he is an employee of the circuit court rather than of Jackson County, appellant relies upon a "control" test, citing, *e.g., Hammonds v. Haven,* 280 S.W.2d 814, 818 (Mo. 1955), and *Barnes v. Real Silk Hosiery Mills,* 341 Mo. 563, 108 S.W.2d 58, 61 (1937).

Under the stipulated facts the Circuit Court of Jackson County, through an associate circuit judge, "controlled" appellant working as bailiff. It was a magistrate who hired and later an associate circuit judge who retained appellant, set the duties, supervised and had the right to fire him. Indeed, it is essential that the court, not the county, control those personnel who assist it in performing its duties. *See State ex rel. St. Louis County v. Edwards,* 589 S.W.2d 283, 289 (Mo. banc 1979); *State ex rel. Weinstein v. St. Louis County,* 451 S.W.2d 99, 102 (Mo. banc 1970). However, respondent contends that, for purposes of determining who is a state employee within

the meaning of § 105.711.2(2), the "control test" is not conclusive. Rather the classification of employees as state and nonstate employees within the judicial system for purposes of the statute turns upon "who pays the employee," and, because the county pays appellant, he is for purposes of the statute a county employee.

The legislature has not defined the statutory terms "employee of the state of Missouri or any agency thereof" as they appear in § 105.711.2(2). To determine the intent and meaning of the words they must be considered in their context and in keeping with statutes *in pari materia. State ex rel. Stamm v. Mayfield,* 340 S.W.2d 631, 634 (Mo. banc 1960); *State ex rel. Wright v. Carter,* 319 S.W.2d 596, 600 (Mo. banc 1958). "[I]n construing a statute we may take into consideration statutes involving similar or related subject matter when such statutes shed light upon the meaning of the statute being construed." *Weber v. Missouri State Highway Comm'n,* 639 S.W.2d 825, 829 (Mo.1982). "This is so even though the statutes are found in different chapters and were enacted at different times." *Id.*

In determining whether appellant is an employee of the state or an agency thereof, it is significant that elsewhere the legislature has made the designation of certain judicial personnel as state employees dependent upon their being paid by the state. Section 483.083, RSMo Cum.Supp.1984, effective until January 1, 1985, concerning compensation for circuit clerks, provided in part:

7. Payment of the compensation provided in this section shall be payable in equal monthly installments, except that the salary of the circuit clerk of the city of St. Louis shall be paid in semimonthly installments and except that all such compensation paid by the state shall be paid in installments as provided in section 33.100, RSMo. The compensation of all circuit clerks *shall be paid by the state and they shall be considered state employees* for all purposes except the

manner of their selection, appointment or removal from office; provided, however, that the circuit clerk of St. Louis County and the court administrator of Jackson County *shall continue to be paid by those counties and shall not become state employees,* but St. Louis County and Jackson County shall each be paid an amount which is equivalent to a circuit clerk's salary as provided in subsection 3 of section 483.015.

(Emphasis added.) Effective January 1, 1985, the legislature added the circuit clerk of the City of St. Louis to those to be paid by the local entity and to those who "shall not become state employees." Section 483.083.7, RSMo 1986. Also relevant is § 483.245.6, RSMo 1986:

> The salaries of deputy circuit clerks and division clerks shall be established by the circuit clerk in the case of deputy circuit clerks, or the judge appointing the division clerk in the case of division clerks, within salary ranges and classifications which may from time to time be established by administrative rule of the supreme court within the limit of funds appropriated for this purpose. *The salaries* of deputy circuit clerks and division clerks *shall be paid by the state, and they shall be state employees.*

(Emphasis added.)

Although the quoted provisions relate to personnel other than bailiffs, they exhibit a legislative intent, in apportioning duties and liabilities between the state and counties, to consider as state employees those judicial personnel paid by the state and to consider as nonstate employees those judicial personnel paid by the county. For example, when the salary of the circuit clerk of the City of St. Louis was made payable from city funds rather than state funds as of January 1, 1985, the legislature withdrew that clerk's status as a state employee.

In other contexts it is often observed that the test usually applied to determine the existence of a master-servant relationship is the right of control, *e.g., Cline v.*

*Carthage Crushed Limestone Co.,* 504 S.W.2d 102, 105–106 (Mo.1973); *Hammonds,* 280 S.W.2d at 818; however, it is clear that the term "employee" may have different meanings in different connections. *State ex rel. Maryland Casualty Co. v. Hughes,* 349 Mo. 1142, 164 S.W.2d 274, 277 (1942). Appropriate to this issue is the following statement of the Superior Court of New Jersey, made when determining responsibility for the defense costs of a civil rights suit against two municipal police officers functioning as members of a county task force:

> We are not dealing in this case with a question of vicarious liability to a claimant of the State, county or municipality for the tortious acts of the individual police officers, in which event the factual and legal problems relating to borrowed employees and control might come into play. We are rather concerned with the narrow issue of responsibility for the defense of the civil action in which legislative provisions and the controlling agreements are of paramount significance. Doctrines of vicarious liability have no place in the determination of the particular issue involved in this appeal.

*Township of Edison v. Hyland,* 156 N.J. Super. 137, 383 A.2d 714, 717 (App.Div. 1978) (municipalities, not county or state, responsible for the police officers' defense costs); *see also Dunne v. Fireman's Fund Am. Ins. Co.,* 69 N.J. 244, 353 A.2d 508, 511–12 (1976) (county prosecutor's detectives, whose salaries are paid by the county, but who are controlled by a state officer, are employees of the county for certain administrative and remunerative purposes even though they were "agents of the State" in preparing and executing an affidavit for a search warrant).

For the reasons above, appellant is, in the context of § 105.711.2(2), an employee of Jackson County because it is the county that pays his salary and provides his employee benefits. We need not decide whether appellant might be considered a state employee for other purposes.

Cases cited by appellant, including *State ex rel. O'Leary v. Missouri State Bd. of Mediation*, 509 S.W.2d 84 (Mo. banc 1974), and *Hawkins v. Missouri State Employees' Retirement Sys.*, 487 S.W.2d 580 (Mo. App.1972), are not inconsistent with our holding. In *O'Leary* we held that employees of the Juvenile Division of the Jackson County Circuit Court were employed by a "public body" within the meaning of § 105.510, RSMo 1969, concerning labor organizations, where § 105.500(3), RSMo 1969, defined "public body" as "the state of Missouri, or any officer, agency, department, bureau, division, board or commission of the state, *or any other political subdivision of or within the state.*" *O'Leary*, 509 S.W.2d at 86, 89 (emphasis added). Because "public body" included political subdivisions and departments of the state as well as the state itself, it was unnecessary to precisely determine whether the employees were employees of the state, the county, or solely of the judiciary. *Id.* at 89.

In *Hawkins*, 487 S.W.2d at 581–83, the court of appeals held that a court reporter, paid in part by the state and in part by the county, is an "employee of the state" within the meaning of § 104.310(15), RSMo 1969, defining "employee" for purposes of the Missouri State Employees' Retirement System. Appellant points to the statement of the court that:

> The law of Missouri is now settled that circuit judges " 'are judges of the State of Missouri and not merely judges of the circuit in which they are elected or appointed' ". *State ex rel. St. Louis County et al. v. Kirkpatrick*, Mo., 426 S.W.2d 72. Since the circuit judge is an officer or employee of the State, rather than of the County in which his court is located, so also it must follow that the Court Reporter appointed by him and who devotes his time exclusively to the circuit judge is also a "state employee".

*Hawkins*, 487 S.W.2d at 582. However, the court further stated, the fact that court reporters' salaries were paid in part by the state removed any possible doubt that the reporter was a state employee. *Id.* Here we are not examining an employee paid in part by the county and in part by the state; rather, appellant's salary is paid solely by the county and we hold, not inconsistently with *Hawkins*, that he is not an employee of the state or an agency thereof within the meaning of § 105.711.2(2), but is instead an employee of the county.

Having concluded that appellant is not an employee of the state or any agency thereof within the meaning of § 105.711.2(2), we affirm.

HIGGINS, C.J., and BILLINGS, DONNELLY and ROBERTSON, JJ., concur.

BLACKMAR, J., concurs in part and dissents in part in separate opinion filed and concurs in dissenting opinion of WELLIVER, J.

WELLIVER, J., dissents in separate opinion filed.

BLACKMAR, Judge, concurring in part and dissenting in part.

The principal opinion properly holds that §§ 105.711 and 105.716.1, RSMo 1986, apply to actions pending on September 28, 1983, their effective date. I am surprised that the Attorney General argues to the contrary.

The record shows that the plaintiff bailiff was hired by the associate circuit judge he serves and is responsible only to the judge. The salary for his position is budgeted by the circuit court, but Jackson County is without power to alter or amend the budget certification. The State Legal Expense Fund exists to protect the covered employees from the burden and expense of civil litigation relating to the performance of their duties. The purposes are apparent. A competent employee, who is in demand elsewhere, may be unwilling to work for the state without protection. Those who do serve may be unwilling to take necessary risks for fear of litigation.

The plaintiff serves only the state. It accords with the purpose of the statutory plan to grant him coverage. The circumstance that his salary and fringe benefits are borne by the county is of minor significance, given the purpose of the Legal Expense Fund. Statutes relating to other functionaries, in which the legislature has adopted explicit classifications are of little help in determining the status of an official whose office the legislature has not dealt with.

The view I take obliges me to comment upon the Attorney General's claim that the plaintiff was not serving the circuit court at the time of the incident giving rise to the suit against him. The pleadings indicate that an employee of a nearby office called for help on account of a disturbance. The plaintiff responded. Any kind of disturbance in the courthouse is of concern to the court, and it makes no difference that the judge the plaintiff served may not have been in the building at the time. The suit relates to a claim "upon conduct of such officer arising out of and performed in connection with his or her official duties on behalf of the state, or any agency thereof, ..." Section 105.711.2(2), RSMo 1986.

I would reverse and remand with directions to grant the plaintiff a declaration of his entitlement as prayed.

WELLIVER, Judge, dissenting.

I respectfully dissent.

Section 105.711 provides that the State Legal Defense Fund shall be available to pay all claims arising from the official duties of "[a]ny officer or employee of the State of Missouri or any agency thereof...." Section 105.716.1 requires the Attorney General to defend against any claim covered under § 105.711.

The majority holds that appellant, who is a bailiff for an associate circuit judge, is neither an employee nor officer of the state because his salary is paid by the county rather than the state.

The true test is not who pays the salary, but who *controls* the employee. *Ham-monds v. Haven,* 280 S.W.2d 814, 818 (Mo. 1955); *Barnes v. Silk Hosiery Mills,* 108 S.W.2d 58, 61 (Mo.1937).

The origin of the salary is but one factor to be used in determining whether appellant is a state employee. Appellant was hired by an official of the judicial branch of Missouri, magistrate Donald Benton. He was retained by another official of the state's judicial branch, Associate Circuit Judge James May. *See e.g., Hawkins v. Missouri: State Employee's Retirement System,* 487 S.W.2d 580 (Mo.App.1972); *State ex rel. St. Louis County v. Kirkpatrick,* 426 S.W.2d 72 (Mo.1968) (holding circuit judges are judges of the State of Missouri). These members of the state judiciary set appellant's duties, supervised him and had the right to fire him. Appellant is responsible for maintaining order in a court of the judicial branch of the state of Missouri, which handles a large number of the state's criminal prosecutions. "Indeed it is essential that the court, not the county control those personnel who assist it in performing it [sic] duties. *See State ex rel. St. Louis County v. Edwards,* 589 S.W.2d 283, 289 (Mo. banc 1979); *State ex rel. Weinstein v. St. Louis County,* 451 S.W.2d 99, 102 (Mo. banc 1970)." (See page ——).

It is no less essential that the state provide legal counsel and representation to personnel who play such a vital role in the orderly performance of the duties of the judicial branch of the state. To hold otherwise could not do other than risk diluting the power of the judicial branch of government and the carefully balanced separation of powers contemplated by the Constitution of Missouri.

Accordingly, I would reverse the circuit court.