STATE of Missouri, DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, DIVISION OF LABOR STANDARDS, Plaintiff–Appellant,

v.

BOARD OF PUBLIC UTILITIES OF the CITY OF SPRINGFIELD, d/b/a City Utilities of Springfield, Missouri, Defendant–Respondent.

No. 20106.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 18, 1995.

Motion for Rehearing or Transfer
Denied Nov. 9, 1995.

Application to Transfer Denied
Dec. 19, 1995.

Jeremiah W. (Jay) Nixon, Atty. Gen., Charles W. Hatfield, Asst. Atty. Gen., Jefferson City, for plaintiff-appellant.

Turner White, Springfield, for defendant-respondent.

Dale L. Ingram, Jolley, Walsh & Hager, Kansas City, as amicus curiae.

SHRUM, Chief Judge.

This declaratory judgment action arises from the efforts of Department of Labor and Industrial Relations, Division of Labor Standards (Department), to obtain compliance by the Board of Public Utilities of the City of Springfield (Defendant) with the Prevailing Wage Act, §§ 290.210–290.340 (the Act), as to an asbestos removal contract.[1] Another issue relates to the validity of a regulation promulgated under the Act that requires public bodies such as Defendant to receive, retain, and permit inspection of a contractor's payroll records. By its counterclaim, Defendant sought to enjoin Department from

---

1. Statutory references are to RSMo 1994 unless otherwise indicated.

enforcing certain regulations. Department appeals from a summary judgment that declared the challenged regulations invalid and also enjoined Department from enforcing them.

We affirm.

## STATUTORY BACKGROUND

The Prevailing Wage Act was enacted by the Missouri legislature in 1957. *City of Kennett v. Labor and Industrial Relations Commission,* 610 S.W.2d 623, 625 (Mo.banc 1981). "Under the Act, all workmen employed by private contractors in the construction of public works must be paid not less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed. Section 290.230[.]" *Id.* However, § 290.230 does not require that the prevailing wage be paid for "construction" work that is "maintenance work." [2]

Section 290.210 is the definitional provision of the Act. Terms defined in that provision include:

> "(1) **'Construction'** includes construction, reconstruction, improvement, enlargement, alteration, painting and decorating, or major repair.
>
> " . . . .
>
> "(4) **'Maintenance work'** means the repair, but not the replacement, of existing facilities when the size, type or extent of the existing facilities is not thereby changed or increased."

In § 290.240.2, the General Assembly authorized "[t]he [D]epartment [to] establish rules and regulations for the purpose of carrying out the provisions of [the Act]."

## DEPARTMENT'S FIRST CLAIM FOR RELIEF

Defendant manages and operates electric generating plants owned by the City of Springfield; consequently, it is a "public body" as defined by the Act. *See* § 290.210(6).

Defendant had repeatedly refused Department's demands that it comply with 8 CSR 30–3.010(8), a regulation promulgated by Department. That regulation requires that "public bod[ies]" receive monthly the payroll records of its "successful bid contractors" on "public works" projects, keep those records on file for one year, and make those records "available at all times for inspection by . . . the Department. . . ." [3]

In its "First Claim For Relief," the Department alleged that it had authority under § 290.240 to promulgate 8 CSR 30–3.010(8). Based on this premise, the Department asked the trial court to "[declare] and [adjudge] that [Defendant] must comply with 8 C.S.R. § 30–3.010(8). . . ."

In its answer, Defendant admitted its noncompliance with 8 CSR 30–3.010(8). Affirmatively, Defendant pled that the regulation was void as being directly contrary to § 290.290.1 and an unauthorized attempt to extend the reach of the statute. In its counterclaim, Defendant sought to enjoin Department from attempting to enforce 8 CSR 30–3.010(8) based on Defendant's claim that the rule was invalid.

Both parties filed motions for summary judgment. The trial court sustained Defendant's motion, found that 8 CSR 30–3.010(8) was invalid and unenforceable, and enjoined Petitioner from attempting to enforce that regulation. However, this portion of the judgment was not based on the theory advanced by Defendant in its pleadings. Rather, the trial court noted that the "legislative objective" was to enforce the Act only as to some public works construction contracts, i.e., those exclusive of "maintenance work." §§ 290.220–.230. It read 8 CSR 30–3.010(8)

**2.** The specific language of § 290.230 requires that the prevailing wage rate be paid by "any public body engaged in the construction of public works, *exclusive of maintenance work."* (Emphasis ours.) *See also* § 290.220.

**3.** In pertinent part, 8 CSR 30–3.010(8) reads: "Each month the successful bid contractors shall submit certified copies of their current pay-rolls to the contracting public body. The public body, upon receipt of the payrolls on a project, shall keep the payrolls on file for a period of one (1) year from the date of submission of the final payrolls by the contractor. . . . The payroll records shall be made available at all times for inspection by . . . the Department. . . ."

as requiring public bodies to keep payroll records for maintenance as well as construction projects. With 8 CSR 30–3.010(8) so interpreted, the court then invalidated it as not having a reasonable relationship to the legislative objective that "prevailing wages" be paid workers "engaged in the construction of public works, exclusive of maintenance work."

■ In Point I(E), Department argues that the trial court erred when it interpreted 8 CSR 30–3.010(8) as requiring public bodies to maintain payroll records for maintenance work. We agree.

■ In interpreting a regulation, courts should employ a construction that will avoid invalidity when possible. *St. Louis Police Officers' Association v. Sayad,* 685 S.W.2d 913, 918[6] (Mo.App.1984). Regulations of administrative agencies that are *in pari materia* must be construed together. *Brown–Forman Distillers Corporation v. Stewart,* 520 S.W.2d 1, 10[8] (Mo.banc 1975). Provisions of a regulation should be viewed in light of, and harmonized with the entire regulation. *Americare Systems, Inc. v. Missouri Department of Social Services,* 808 S.W.2d 417, 420[5] (Mo.App.1991).

An interpretation of 8 CSR 30–3.010(8) as including "maintenance work" might be plausible *if* it is read in a vacuum. However, application of the foregoing rules compels a different conclusion. Regulation 8 CSR 30–3.010 contains several provisions other than subsection (8). All other provisions of the regulation deal with various aspects of the Act explicitly and in detail. When reasonably read, the regulation's other subsections can only be seen as pertaining to work covered by the Act. Indeed, the regulation begins with the following: "All public bodies of Missouri contemplating construction work must obtain from the department a determination of the prevailing hourly rate of wages in the locality (wage determination) which is applicable to that construction." 8 CSR 30–3.010(1). When subsection (8) is viewed in light of, and harmonized with all the provisions of 8 CSR 30–3.010, the only logical conclusion is that the subsection does not, by implication, include prohibited "maintenance work." To hold otherwise would totally disregard the context in which 8 CSR 30–3.010(8) was adopted.

■ Our conclusion that the trial court erred when it interpreted 8 CSR 30–3.010(8) as including "maintenance work" does not mean that we automatically reverse the trial court's finding of its invalidity. In a declaratory judgment action, as in other cases, a correct decision will not be disturbed because the court gave a wrong or insufficient reason therefor. *Edgar v. Fitzpatrick,* 377 S.W.2d 314, 318[12] (Mo.banc 1964); *Dill v. Poindexter Tile Company,* 451 S.W.2d 365, 370[5] (Mo.App.1970). In this case, we are persuaded that the regulation is invalid because it is in direct conflict with § 290.290.1.

■ When a regulation conflicts with a statute, the regulation must fall. *Hershaw v. Fender–Mason Electric Co.,* 664 S.W.2d 628, 629[1] (Mo.App.1984); *Johnson v. Labor and Industrial Relations Commission,* 591 S.W.2d 241, 244[1] (Mo.App.1979). "When there is a direct ... inconsistency between a statute and a regulation, the statute which represents the true legislative intent must necessarily prevail." *Parmley v. Missouri Dental Board,* 719 S.W.2d 745, 755[5] (Mo. banc 1986).

■ If the language in an act is clear and unambiguous, there is no room for construction; in such cases, courts must be guided by what the legislature said. *Golde's Department Stores v. Director of Revenue,* 791 S.W.2d 478, 481[5] (Mo.App.1990). Moreover, where a statute imposes duties on a particular class of persons or entities but not on others, it is to be construed as excluding from its effect all those not expressly mentioned. *See Giloti v. Hamm–Singer Corp.,* 396 S.W.2d 711, 713[1] (Mo.1965); *Brooks v. Pool–Leffler,* 636 S.W.2d 113, 117[1] (Mo.App.1982).

Here, § 290.290.1 of the Act, by its terms, imposes the obligation of payroll-record retention on contractors and subcontractors. From § 290.290.1 it is clear that when the legislature wishes to impose payroll-record retention duties on an entity, it says so. *See Mueller v. Missouri Hazardous Waste Management Commission,* 904 S.W.2d 552, 558

(Mo.App.1995). Significantly, neither in § 290.290.1 nor elsewhere in the Act is there any reference to similar duties for public bodies. They are omitted from its provisions. The language of § 290.290.1 is unmistakable on this subject; no construction of its language is required. Apparently, the legislature did not deem it necessary to impose the duty of payroll-record retention on public bodies as a means of carrying out the provisions of the Act.

Nevertheless, Department contends that 8 CSR 30–3.010(8) is a "reasonable regulation [that enhances its] ability ... to enforce the [Act]" and thus effectuate the Act's broad remedial purposes. As a result, Department claims it properly exercised its power under § 290.240.2 when it adopted 8 CSR 30–3.010(8). We do not agree. A like argument was made and rejected in *Brooks,* 636 S.W.2d 113, a case we deem analogous to this. In *Brooks,* the Human Rights Commission sent a questionnaire to a radio station seeking information about women and minorities. When the station refused to cooperate, a discrimination suit was filed against it. The dispositive issue centered on a regulation that purported to authorize the commission to file discrimination complaints sua sponte. Two statutes were involved. Section 296.030(7) gave the commission the power to "initiate" complaints. A second statute (§ 297.030) provided that complaints could be "filed" by various parties, not including the commission. After finding that the latter statute was controlling, the Eastern District concluded that the regulation was invalid.

"We recognize that remedial legislation should be broadly and liberally construed to effect its plain purpose.... The legislature, however, specifically defined the class of persons who have standing to file complaints, and it did not include the Commission. Regulations may be promulgated only to the extent of and within the delegated authority of the statute involved, and if the regulation is in conflict with the statute it is invalid...."

*Id.* at 117–18 (citations omitted). *See Parmley,* 719 S.W.2d at 755.

■ When the legislature enacted Missouri's prevailing wage law, it specifically defined the class of persons who had responsibility for keeping, retaining, and making available payroll records, which did not include public entities. The scope of Department's rulemaking power is limited to establishing "rules ... for the purpose of carrying out the provisions of [the Act]." By enacting 8 CSR 30–3.010(8), Department tried to expand upon the provisions of the Act. This was an abuse of Department's rule-making authority. *See Parmley,* 719 S.W.2d 745; *Brooks,* 636 S.W.2d 113. As erroneous regulations are a nullity, *Golde's,* 791 S.W.2d at 481, the trial court did not err when it declared 8 CSR 30–3.010(8) invalid and enjoined its enforcement.[4]

## DEPARTMENT'S SECOND CLAIM FOR RELIEF

In its "Second Claim For Relief," Department charged that Defendant violated the Act when it contracted with Western Spray Insulation Co. (Western) without obtaining a prevailing wage determination. Defendant's contract with Western involved an asbestos abatement project in a part of Defendant's "James River Power Station" (JRPS). Additionally, Department alleged that a dispute existed between it and Defendant about the validity of 8 CSR 30–3.020(2). That regulation provides:

---

4. We do not ignore *Foremost–McKesson, Inc. v. Davis,* 488 S.W.2d 193 (Mo. banc 1972), a case heavily relied upon by Department. The *Foremost–McKesson* opinion recounts several well-established principles of law to guide courts in interpreting statutes and administrative agency regulations. However, *Foremost–McKesson* is factually dissimilar from this case. In *Foremost–McKesson,* the legislature empowered the commissioner of agriculture to adopt rules to carry out the "purposes" of the law, whereas § 290.240.2 grants Department authority to establish regulations to carry out the "provisions" of the law. The latter term is more restrictive than the former. Moreover, in *Foremost–McKesson* there was not a direct conflict or inconsistency between the questioned regulations and statutes. Such a conflict exists in this case. Finally, the *Foremost–McKesson* court emphasized that the challenged regulations were essential to enable the commission to obtain information necessary for enforcement of the act. 488 S.W.2d at 198. That is not this case. Here, Department was empowered by the Act to get necessary payroll information from contractors and subcontractors.

"The term major repair, for purposes of identifying construction subject to the Prevailing Wage Law, means the repair of an existing facility, such as a roof or other existing system or work that performs a unique and necessary function, where the amount of repair involves twenty percent (20%) or more of the roof or other existing facility. If the size, type or extent of the existing facilities is changed or increased, the work performed shall constitute construction subject to the Prevailing Wage Law. A project shall be considered to be maintenance work, as opposed to major repair subject to the Prevailing Wage Law, if the repair involves less than twenty percent (20%) of the existing facility and the size, type or extent of the existing facility is not changed or increased."

Department alleged that its "regulatory definition of 'construction' is set forth in" 8 CSR 30–3.020(1). Additionally, Department averred that it had "refined" the statutory definition of "construction" via 8 CSR 30–3.020(2). According to Department, the dispute as to whether asbestos abatement contracts are subject to the Act arose because "[Defendant] appears to have misconstrued the definition of 'existing facilit[ies]'" or interpreted it differently than Department intended when it promulgated 8 CSR 30–3.020(2). Department contended that it was "entitled to a judgment ... declaring that asbestos abatement and other major repair or replacement of facilities falls within the definition of 'construction' under the [Act]." Additionally, Department claimed to be

"entitled to a judgment declaring that a repair of a public facility by [Defendant] is subject to the [Act] either if (a) repair involves more than twenty percent of a functional portion of an existing building or structure, or (b) the size, type or extent of any functional portion of an existing building or structure is thereby changed."

In its answer, Defendant admitted that it was aware of Department's position that workmen doing "asbestos abatement projects" were entitled to prevailing wages as defined by the Act. Defendant answered that "the regulations referred to in [Depart-ment's] petition are void as being in excess of [Department's] statutory authority." Moreover, Defendant filed a counterclaim, in which it again alleged that 8 CSR 30–3.020(1) and (2) were void and asked that Department be enjoined from attempting to enforce them.

As noted before, both parties filed motions for summary judgment. The part of Defendant's motion that deals with Department's second claim for relief was supported by an affidavit. Herbert Woods, superintendent at Defendant's JRPS, supplied the affidavit. According to Woods' uncontroverted affidavit, JRPS is an electric generating facility that has five coal-fired steam units and two natural gas combustion turbines. It further states that Unit 3 is one of the five steam units, and that Unit 3 consists of a boiler, a turbine, and a generator. The affidavit explained the process as follows: Unit 3 uses specially treated water which is vaporized into steam to provide energy for the turbine, which then powers the generator. Next, after steam passes through the turbine, it condenses into water and is conducted through pipes to a reheater. Finally, once the water is reheated, it returns to the boiler for conversion again into steam. According to the affidavit, the pipes and heater in this case were covered with insulation containing asbestos until December 1992. Woods' affidavit states that Defendant contracted with Western to remove the asbestos insulation from the heater and related fixtures during December 1992 and January 1993. The affidavit also states that the asbestos removal was done inside the power plant and that the waste asbestos was removed from the plant and disposed of by Western. Finally, we quote from Woods' affidavit:

"The heater and piping was originally built as a part of and is used only with Unit 3. It has no function or use otherwise. The above contract did not change the size, type, or extent of the heater or piping."

As stated earlier, the trial court sustained Defendant's motion for summary judgment. On appeal, Department challenges only two parts of the judgment that

dealt with its second claim for relief.[5] One such claim is that the trial court erred when it invalidated 8 CSR 30–3.020(2) and enjoined Department from enforcing it. In its third point, Department argues that 8 CSR 30–3.020(2) was not invalid because it was neither inconsistent with provisions of the Act nor did it lack a reasonable relationship to the legislative objective.[6] We disagree.

In its pleadings, Department characterized 8 CSR 30–3.020(2) as a refinement of the statutory definition of "construction." In fact, the subject regulation attempts to define the term "major repair" (which in turn is part of the § 290.210(1) definition of construction) to mean *"repair of an existing facility* ... where the amount of repair involves twenty percent (20%) or more of the ... existing facility."

The phrase "repair of an existing facility" as used in 8 CSR 30–3.020(2) is not foreign to the Act; it is part of the § 290.210(4) definition of "maintenance work." Sections 290.210(4), 290.220, and 290.230(1) provide that *any* "repair ... of existing facilities" is work excluded from the Act, *provided* that the "repair ... of existing facilities" does not change or increase "the size, type or extent of the existing facilities." Thus, the test to be applied for "maintenance work" is not the magnitude of the repair; rather, it is whether a change or increase in the size, type, or extent of the existing facility is wrought by the repair. The clear inference is that the legislature did not intend that a test for magnitude be used to determine the Act's applicability. *See Brooks,* 636 S.W.2d at 117.

The first sentence of 8 CSR 30–3.020(2), which declares without qualification that the Act applies if the amount of "repair of an existing facility" is twenty percent or more, enlarges the scope of coverage of the Act. To illustrate, if the amount of the "repair of an existing facility" entails twenty percent or more of that facility but such repair does not change or increase the size, type, or extent of such facility, the statutory provisions, i.e., §§ 290.210(4), 290.220, and 290.230(1), declare that such work is not covered by the Act. On the other hand, the regulation would dictate that such work would be covered by the Act. The regulation contradicts the statutory scheme and attempts to broaden the coverage of the Act. Where, as here, there is a direct conflict or inconsistency between a statute and a regulation, the statute must necessarily prevail. *See Parmley,* 719 S.W.2d at 755[5]. Therefore, regulation 8 CSR 30–3.020(2) is a nullity and is void. *See Golde's,* 791 S.W.2d at 481[5]; *Missouri Hospital Association v. Department of Consumer Affairs,* 731 S.W.2d 262, 264[2] (Mo. App.1987). The trial court did not err in so declaring.

■ In Point II, Department challenges as erroneous that part of the judgment that deals with Defendant's contract with Western for the removal of asbestos from Unit 3 of the JRPS. In that part of the judgment, the trial court enjoined Department from attempting to enforce the Act and regula-

---

5. On appeal, Department has not challenged three parts of the judgment. Left unchallenged is the order that enjoined Department from "attempting to enforce Sections 290.210 et seq., RSMo., 8 CSR 30–[3.]010(8) and 8 CSR 30–[3.]020 as to 'maintenance work' as that term is defined in Section 290.210(4), RSMo." Also, Department has not appealed from the trial court's denial of Department's request for a declaration on the broad question of whether "asbestos abatement contracts are subject to the prevailing wage statute." Finally, Department did not appeal from that part of the judgment that found 8 CSR 30–3.020(1) invalid and enjoined Department from enforcing that regulation. In footnote 2 of their reply brief, Department observes that "[t]he trial court's order purports to enjoin enforcement of 8 CSR § 30–3.020 in its entirety, although only subdivision (2) of the rule was at issue in the case." Continuing,

Department urges that we "lift the part of the injunction [that pertains to 8 CSR 30–3.020(1)]" as it is "beyond the scope of the issues in this case (apparently inadvertently)." We lack authority to take such action. Regulation 8 CSR 30–3.010(1) was an issue in the case. It became an issue when Department pled its existence and Defendant answered affirmatively that all regulations mentioned in Department's pleadings were invalid. It also became an issue via Defendant's counterclaim. Department has raised no claim of error with reference to the above three parts of the judgment; consequently, they are final. *Collins v. State,* 792 S.W.2d 887, 889 (Mo.App. 1990).

6. Inexplicably, in Point III, Department does not challenge the trial court's declaration that 8 CSR 30–3.020(1) was invalid.

tions as to wages paid under Defendant's contract with Western. It found that the asbestos removal performed pursuant to the Western contract was maintenance work; consequently, it was excluded from the Act. In reaching its conclusion, the court declared that undisputed facts gleaned by it from Woods' affidavit were "decisive" of the issue, "particularly paragraph 10." That paragraph reads:

"Performance under the contract did not change the size, type or extent of the heater or piping."

Defendant's Point II has various subpoints. Since they are closely related, we deal with two of Department's subpoints simultaneously. In Point II(C), Department argues that Defendant was not entitled to a judgment as a matter of law because the trial court "relied on a conclusory and speculative statement in Defendant's affidavit." The challenged statement is Woods' affidavit testimony that "[t]he [Western] contract did not change the size, type, or extent of the heater or piping." In Point II(D), Department contends that Defendant was not entitled to a judgment as a matter of law because "[superintendent Woods'] affidavit establishes that the size, type or extent of a facility was changed."

In developing these arguments, Department recognizes that when the issue is whether certain work is "maintenance work," it is essential to identify *what* is the "existing facility." The elements of "maintenance work" are: (1) work that is repair, not replacement; (2) in an existing facility; and (3) there is no change or increase in the size, type, or extent of the "existing facility." § 290.210(4).

Here, the trial court did not make an express factual determination as to what constituted the "existing facility." It did, however, implicitly find that the "existing facility" was the uninsulated piping and heater of Unit 3. That finding is implicit in the trial court's ruling that "[m]ost critically for the issues in this case is the conclusively estab-

lished fact that the work performed by Western ... 'did not change the size, type, or extent of the *heater or piping.*'" In addition, we understand the trial court to have made such finding from this ruling:

"The decisive facts for Issue A [whether the contract with Western was subject to the Act] are set forth in the above numbered paragraphs, particularly paragraph 10. Those facts require the Court to conclude the contract with Western ... is not subject to [the Act]."

It is unnecessary to set forth all findings in a declaratory judgment action. *Smith v. Worsham,* 552 S.W.2d 367, 370[3] (Mo.App.1977). The general rules with respect to findings apply in actions for declaratory judgment. 26 C.J.S. *Declaratory Judgments* § 157 (1956). In declaratory judgment actions, as in other cases, any fact issue upon which no finding was made shall be considered to have been found in accordance with the result reached. *See Safeco Insurance Company of America v. Stone & Sons, Inc.,* 822 S.W.2d 565, 567[1] (Mo.App.1992); *Automobile Club Inter–Insurance Exchange v. Chamberlain,* 839 S.W.2d 378, 381[4] (Mo.App.1992); Rule 73.01(a)(2).

Applying the foregoing principles, we presume that the trial court determined from the statements in Woods' affidavit that the uninsulated heater and piping of Unit 3 was the facility to which the maintenance test should be applied. Neither in Point II, nor in other points relied on does Department challenge that finding or assert that the trial court erred in sustaining Defendant's motion for summary judgment because of that finding.[7] Instead, Department makes various suggestions in its brief about what the "facility" might be. On the one hand, it argues that the asbestos insulation might be a facility, but on the other hand, if not, the "heater and piping" are the facility. Department's argument lacks a factual foundation in that Department did not offer any evidence to contradict Woods' affidavit. Neither did Department present an alternate theory, sup-

---

7. Any claim by Department that the trial court erred when it implicitly found that piping and heater of Unit 3 was the "existing facility" has been abandoned. Consequently, we need not decide the broad question of whether "existing facility" means entire building or component parts.

ported by evidence, as to what the existing facility was. It is well settled that facts set forth by an affidavit in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376[2] (Mo. banc 1993).

■■■■ As Department argues in Point II(C), the proper function of an affidavit is to state facts and not conclusions. *First Community Bank v. Western Surety Company*, 878 S.W.2d 887, 890[3] (Mo.App.1994). Conclusory allegations in an affidavit are insufficient to raise questions of fact in a motion for summary judgment. *Channing v. Brindley–Sullivan, Inc.*, 855 S.W.2d 463, 466[10] (Mo. App.1993). However, when observations do not require expertise, conclusive answers by a lay witness are permissible when used to articulate a summary of conditions. *Galvan v. Cameron Mutual Insurance*, 733 S.W.2d 771, 774[8] (Mo.App.1987). Here the statement that "[t]he [Western] contract did not change the size, type, or extent of the heater or piping" is one of fact. *See Channing*, 855 S.W.2d at 466[11] (holding that a statement that contractor "was on the job site ... doing the work it was hired to do" was one of fact). We reject Department's arguments to the contrary.

Under Point II(D), Department contends that even if the asbestos insulation is not a facility, the Woods affidavit establishes that the pipes and heater are "facilities." Department argues that "[t]he Woods affidavit reveals that the work in question changed the type of heater and piping from asbestos insulation covered to something else. Therefore, the work was not maintenance." On this record, we regard that argument as specious.

■■■ The fact is, Department offered no evidence to contradict Woods' affidavit; consequently, the trial court was to take the facts set forth therein as true. *ITT*, 854 S.W.2d at 376[2]. On this record, removal of asbestos from around the pipe and heater does not "change" the "size, type or extent of the existing facility" as would remove this contract from the category of "maintenance

work." We reject Department's argument to the contrary.

■■■ We reproduce the only prong of Department's second point not yet addressed:

"The trial court's order granting [Defendant's] motion [for] summary judgment as to a specific contract should be reversed because [Defendant] did not submit a *prima facie* case establishing that it was entitled to judgment as a matter of law...."

This part of Department's second point on appeal does not conform to Rule 84.04(d) and preserves nothing for review. The requirements of Rule 84.04(d) include:

"The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...."

"The three components of a point relied on are (1) a concise statement of the challenged ruling of the trial court, (2) the rule of law which the court should have applied, and (3) the evidentiary basis upon which the asserted rule is applicable." *Hoffman v. Koehler*, 757 S.W.2d 289, 292[2] (Mo.App.1988). For another articulation of the *wherein* requirement, *see Estate of Goslee*, 807 S.W.2d 552 (Mo.App.1991), where we observed that the *wherein* portion of a point relied on should advise the court and the opposing party of the way in which the trial court misapplied controlling principles of law or misconstrued the facts. *Id.* at 556.

■■■ Compliance with Rule 84.04(d) is discussed at length in *Thummel v. King*, 570 S.W.2d 679 (Mo.banc 1978); *Midwest Materials Company v. Village Development Company*, 806 S.W.2d 477, 483 n. 1 (Mo.App. 1991); and numerous other Missouri appellate court opinions. Points that do not comply with Rule 84.04(d) preserve nothing for review. *See In re Marriage of McCoy*, 818 S.W.2d 322, 325[3] (Mo.App.1991). Here, this prong of Department's second point furnishes no hint of wherein the Defendant failed to submit a *prima facie* case to estab-

lish that it was entitled to judgment as a matter of law.

We affirm the judgment of the trial court.

PREWITT, P.J., and CROW, J., concur.