Jim HADEL and Lisa Ege,
Plaintiffs–Appellants,

v.

BOARD OF EDUCATION OF SCHOOL DISTRICT OF SPRINGFIELD, R–12,
Defendant–Respondent.

No. 22383.

Missouri Court of Appeals,
Southern District,
Division Two.

March 11, 1999.

Douglas W. Greene and Douglas W. Greene, III, of Springfield, for Appellant.

Charles B. Cowherd, Husch & Eppenberger, L.L.C., of Springfield, for Respondent.

Before SHRUM, P.J., MONTGOMERY, J., and BARNEY, J.

PER CURIAM.

On March 28, 1995, Jim Hadel and Lisa Ege, individually and as agents and representatives of a class consisting of the membership of Local Union No. 20 affiliated with the United Union of Roofers, Waterproofers and Allied Workers of America ("Appellants"), filed a two count petition in the Circuit Court of Greene County, Missouri, seeking a declaratory judgment and injunctive relief against the Board of Education of School District of Springfield, R–12 ("Respondent") arising from three past and contemplated future roofing project(s) relating to Respondent's existing school facilities. *See infra.* In its judgment, the trial court found the issues in favor of Respondent and denied Appellants' request for injunctive relief. Appellants appeal raising two points of trial court error, discussed below. We affirm.

The key question in this appeal arises from the interpretation to be given to Section 177.086, RSMo 1994, as later amended by Section 177.086, RSMo Cum.Supp. 1996.[1] Section 177.086, RSMo 1994, in pertinent part, reads as follows:

1. Any school district authorizing the construction of facilities which may exceed an expenditure of two thousand five hundred dollars shall publicly advertise, for two successive weeks, in a newspaper of general publication . . . .

2. No bids shall be entertained by the school district which are not made in accordance with the specifications furnished by them and all contracts shall be let to the lowest responsible bidder complying with the terms of the letting, provided that the said school district shall have the right to reject any and all bids.

The 1996 amendment to the foregoing section increases the expenditure limits from "two thousand five hundred dollars" to "twelve thousand five hundred dollars," effective August 28, 1996. No other substantive changes were made. *See* § 177.086, RSMo Cum.Supp.1996.

The parties entered into pre-trial, amended stipulations of uncontroverted facts which were filed with the trial court on April 11, 1997. These stipulations, in pertinent part, are useful in explaining this case and the reasons why Appellants brought their action. They reveal that:

During 1993 and 1994, [Respondent] used its employees to do work on the roofs of three separate school buildings which involved removing and replacing the roofing materials from less than 20% of the roof surface area on each of the school buildings. Each of those jobs involved an expenditure of over $2,500.

. . .

The roofing work by [Respondent's] employees . . . does not result in any change in the size, type or extent of the roofs of the buildings on which such work is performed. The work is done on existing roofs which have deteriorated due to age, weather and usage.

Additionally, it was jointly stipulated that:

[Respondent] expects to do roofing work in the future which involves the removal and replacement of up to 20% of the total roof area of one of its buildings at a cost of over $12,500, in which case it

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

intends to follow its [normal] policy with respect to advertising for bids . . . .

With regard to Respondent's policy and practice in advertising for bids, it was also jointly stipulated that:

It was and is the policy and practice of [Respondent] to advertise for bids all projects involving the removal and replacement of faulty and worn roofing materials encompassing more than 20% of the total roof surface area of one of its buildings where the cost of such work was expected to exceed the sum of $2,500 .00 prior to August 28, 1996, and after that date where the cost of such work is expected to exceed the sum of $12,500.00.

In the first count of their petition, Appellants sought a declaration from the trial court that: (a) the roofing work performed in 1993 and 1994 at the behest of Respondent was in fact "construction work" as opposed to "maintenance work;" (b) that Respondent "improperly and illegally performed construction work for roofing projects on city schools without appropriate legal bids and public advertisement . . .;" and (c) "that [Respondent] will, in the future, improperly and illegally perform construction work for roofing projects on city schools without appropriate legal bids and public advertisement for bids as contemplated by state statute, unless enjoined and prohibited by this Court." In their second count, Appellants sought injunctive relief to enjoin Respondent from "committing or allowing to be committed any further acts, omissions, or violations of [Respondent's] bidding procedure as defined by state statute."

Prior to trial, it was further stipulated by the parties that the trial court would be requested to determine one primary issue:

Whether the removal and replacement of faulty and worn roof materials encompassing up to 20% of the total roof sur-

face area on one of [Respondent's] school buildings (involving expenditures of more than $2,500.00 prior to August 28, 1996, and more than $12,500.00 thereafter) constitute 'repair' or 'maintenance' as claimed by [Respondent] so as to not require advertised bids under Section 177.086 RSMo., or does such work constitute 'construction' as alleged by [Appellants] so that advertised bids under Section 177 .086 RSMo. are required.[2]

In its judgment, the trial court found against Appellants in both counts, and denied Appellants' request for injunctive relief. The trial court made the following pertinent findings:

3. The word 'construction' appearing in § 177.086.1 RSMo.1994, as amended, is not defined in that statute, but that same word is defined in § 290.210(1), RSMo.1994, which is part of the prevailing wage law for the State of Missouri. In § 290.210(1) RSMo.1994, the term 'construction' is defined and it is distinguished from the terms 'repairs' or 'maintenance.' The Court believes that said definitions are useful in the interpretation of the term 'construction' as it appears in § 177.086.1 RSMo.1994, as amended, under the doctrine of *pari materia.*

4. § 177.086.1 RSMo.1994, as amended, does not require advertised bids for the removal and replacement of faulty and worn roof materials encompassing up to 20% of the total roof surface area of one of [Respondent's] buildings (involving expenditures of more than $2,500 prior to August 28, 1996, or more than $12,500 thereafter) in that such work constitutes 'repairs' or 'maintenance.'

5. The costs of this action should be taxed to [Appellants].

Appellants raise two points of trial court error. In their first point and accompanying argument, Appellants essen-

---

2. The second issue also requested the trial court "to determine how the costs of this

action should be apportioned."

tially maintain that the trial court erred by erroneously applying " § 176.086 RSMo 1994 as amended," because regardless of the percentage of roof space involved, if the contemplated expenditures exceeded the minimum monetary amount, then publicly advertised bidding was required. In this same vain, Appellants also maintain that the trial court erroneously construed the statutory definition of "construction" as defined in section 290.210, in that section 290.210 defines "construction" as "construction, reconstruction, improvement, enlargement, alteration, painting and decorating, or major repair." Therefore, Appellants argue that the legislative scheme envisioned that whenever any "repair" exceeded the applicable, minimum monetary amount such "repair" became a "major repair," requiring public advertisement for bids. In their second point, Appellants assert that the "trial court erroneously considered facts and hypothetical facts not in evidence as well as facts, hypothetical facts and hypothetical possibilities not contemplated nor included in the parties' stipulation of uncontroverted facts."

"Under the standard of review in declaratory judgment cases, we will affirm the decision of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *McDermott v. Carnahan*, 934 S.W.2d 285, 287 (Mo. banc 1996).

In our review we must determine whether the trial court drew correct legal conclusions from the stipulated facts entered into by the parties. *See Hay v. Kohl*, 902 S.W.2d 850, 851 (Mo.App.1995). If there are conflicts among the facts stipulated they will be considered as having been determined in accordance with the result reached by the trial court. *Id.* at 852. The judgment will be affirmed if the result reached is correct on any tenable basis. *Id.*

In construing a statute, we bear in mind several fundamental concepts. Initially, we observe that construction of a statute is a question of law, not judicial discretion. *Delta Air Lines, Inc. v. Director of Revenue*, 908 S.W.2d 353, 355 (Mo. banc 1995). Our ultimate purpose is to ascertain and give effect to the legislature's intent in enacting the statute. *State ex rel. Riordan v. Dierker*, 956 S.W.2d 258, 260 (Mo. banc 1997); *City of Ellisville v. Lohman*, 972 S.W.2d 527, 534 (Mo.App. 1998). We will read statutes in their plain, ordinary and usual sense. *Bosworth v. Sewell*, 918 S.W.2d 773, 777 (Mo. banc 1996). Where the language of a statute is clear and unambiguous, we will give effect to the language as written and will not resort to statutory construction. *M.A.B. v. Nicely*, 909 S.W.2d 669, 672 (Mo. banc 1995). If construction is necessary, we will construe a statute, or a provision thereof in context. *State ex rel. Lebeau v. Kelly*, 697 S.W.2d 312, 315 (Mo.App.1985). In order to shed light on a statute's meaning, this Court may also consider other statutes that involve similar or related subject matter. *State ex rel. Rothermich v. Gallagher*, 816 S.W.2d 194, 200 (Mo. banc 1991).

With these precepts in mind we are positioned to review Appellant's first point of error, as previously set out. In doing so, we first revisit the pertinent statutory provisions of section 177.086.1, to-wit:

Any school district authorizing the construction of facilities which may exceed an expenditure of two thousand five hundred dollars [$12,500.00 for "construction" after August 28, 1996], shall publicly advertise . . . .

Being "obligated to give each word, clause, sentence and section of the statute meaning," *Waisblum v. City St. Joseph*, 928 S.W.2d 414, 417 (Mo.App.1996), we readily observe that two statutory conditions must be met before a school district is required to advertise for bids publicly: (a) the work must first qualify as "construction of facilities" and (b) the expense of the "construc-

tion" must exceed the minimum amount set out in the statutory version, i.e., $2,500.00 or $12,500.00 after August 28, 1996.

We also observe that the word "construction" is not defined either in section 177.086 or anywhere else in Chapter 177, which relates to school property and equipment. However, with regard to agreements between boards of education and not-for-profit corporations, section 177.088, in pertinent part, reads:

> 2. The board of any educational institution [defined as any school district] may enter into agreements ... in order to provide for the acquisition, construction, improvement, extension, repair, remodeling, renovation and financing of sites, buildings, facilities ....

§ 177.088.2. The statutory language contained in the foregoing sub-section appears to distinguish the word "construction" from the words "repair," "remodeling," or "renovation."

Additionally, we note that Black's Law Dictionary defines "construction", in pertinent part, as: "[t]he creation of something new, as distinguished from the repair or improvement of something already existing. The act of fitting an object for use or occupation in the usual way, and for some distinct purpose." BLACKS LAW DICTIONARY 312 (6th ed.1990). Black's Law Dictionary also defines "construct" as: "[t]o build; erect; put together; make ready for use. To adjust and join materials, or parts of, so as to form a permanent whole. To put together constituent parts of something in their proper place and order. 'Construct' is distinguishable from 'maintain,' which means to keep up, to keep from change, to preserve." BLACK'S LAW DICTIONARY 312 (6th

ed.1990). In *Larson v. Crescent Planing Mill Co.,* 218 S.W.2d 814 (Mo.App.1949), the Eastern District of this Court also acknowledged "that the term 'construction' is ordinarily defined as the building or erection of something which did not exist before as distinguished from the alteration, repair, or improvement of something already existing." *Id.* at 820. However, the *Larson* court also observed that "the word is one of variable meaning," essentially depending upon its meaning in the context in which the word may be used. *See Id.*[3]

As previously alluded to, in construing a statute we may take into consideration statutes involving similar or related subject matter when such statutes shed light upon the meaning of the statute being construed. *Weber v. Missouri State Highway Comm'n,* 639 S.W.2d 825, 829 (Mo.1982). This is so even though the statutes are found in different chapters and were enacted at different times. *Id.* Thus, in the absence of a more definitive determination as to what the word "construction" means in the context of section 177.086, we agree with the trial court in its determination that section 290.210(1)(defining the term "construction" in the context of the Prevailing Wage Act) is in *pari materia* with section 177.086.[4] This is particularly appropriate because section 290.210, et. seq., i.e., The Prevailing Wage Act, generally relates to the construction of public works by a public body vis-à-vis wages paid to workmen. *See State Dept. of Labor v. Board of Public Utils.,* 910 S.W.2d 737, 740 (Mo.App.1995). A companion section to section 290.210, i.e., section 290.230.1, provides, in pertinent part, that "not less than the prevailing hourly rate of wages ... shall be paid to all workmen employed by or on behalf of any

---

3. Indeed, the *Larson* court then went on to conclude that in attempting to determine a contractual provision as to what was meant by the phrase "millwork for construction purposes" so as to determine the percentage of commission due plaintiff, "the parties had in mind that such percentage should apply to the sale of all millwork, *whether for new con-*

*struction or the alteration or improvement of existing structures." Id.*(emphasis added)

4. Recall that the trial court determined that the term "construction" as defined in section 290.210 is to be "distinguished from the terms *repairs or maintenance.*"

public body *engaged in the construction of public works, exclusive of maintenance work."* § 290.230.1(emphasis added); *see Associated Gen. Contractors v. Department of Labor,* 898 S.W.2d 587, 590 (Mo. App.1995).

■ We also observe that section 290.210, in pertinent part, reads as follows:

As used in sections 290.210 to 290.340, unless the context indicates otherwise:

(1) **"Construction"** includes construction, reconstruction, improvement, enlargement, alteration, painting and decorating, or major repair.

. . .

(4) **"Maintenance work"** means the repair, but not the replacement, of existing facilities when the size, type or extent of the existing facilities is not thereby changed or increased.

We note further that "[w]hen the legislature enacts a statute referring to terms which have had other legislative or judicial meanings attached to them, the legislature is presumed to have acted with knowledge of these meanings." *Boyd v. State Bd. of Registration for Healing Arts,* 916 S.W.2d 311, 315 (Mo.App.1995); *see also State v. Haskins,* 950 S.W.2d 613, 616 (Mo.App. 1997). We, therefore, presume that the General Assembly was cognizant of the definitions of "construction" and "maintenance work" as set out in section 290.210 (enacted in 1957) when it enacted section 177 .086 in 1965 with the "construction of facilities" language containing a monetary threshold limit of $2,500.00; and when it enacted section 177.086 in 1996, with the same "construction of facilities" language, but an increased monetary threshold limit of $12,500.00.

In Appellants' arguments they make blanket assertions that "if the contemplated expenditure may exceed the minimum monetary amount, then bid advertisement is required;" and, alternatively, that the "Legislature intended repairs of the magnitude referred to in Section 177.086 RSMo. to be major." These assertions,

however, do not stand up under scrutiny, particularly in light of *State Dept. of Labor,* 910 S.W.2d 737 (Mo.App.1995). In *State Dept. of Labor,* this Court determined that "Sections 290.210(4), 290.220, and 290.230(1) provide that *any* repair . . . of existing facilities is work excluded from the Act, *provided* that the repair . . . of existing facilities does not change or increase the size, type or extent of the existing facilities." *Id.* at 744. "Thus, the test to be applied for 'maintenance work' *is not the magnitude of the repair; rather, it is whether a change or increase in the size, type, or extent of the existing facility is wrought by the repair."* *Id.*(emphasis added). "The clear inference is that the legislature did not intend that a test for magnitude be used to determine the Act's applicability." *Id.*

■ Therefore, with the foregoing in mind, and noting the relationship between section 177.086 and section 290.210, *et seq.,* we recall that the parties' stipulated that:

The roofing work by [Respondent's] employees . . . does not result in any change in the size, type or extent of the roofs of the buildings on which such work is performed. The work is done on existing roofs which have deteriorated due to age, weather and usage.

We, therefore, conclude that under section 177.086 the work previously authorized by Respondent to its three school facilities, involving the removal and replacement of faulty and worn roof materials encompassing no more than 20% of the total roof surface area of any one school facility constituted "maintenance work" and did not constitute the "construction of facilities," so as to have required statutorily advertised bidding, regardless of the monetary amount involved. *See* § 177.086. Concomitantly, under this same rationale, Respondent would not run afoul of section 177.086 regarding its future plans to remove and replace faulty and worn roof materials encompassing no more than 20% of the total roof area of any one of Respondent's school facilities. Point One is denied.

■ We also determine that Appellants' second contention of trial court error lacks merit. In their second point, Appellants contend that the trial judge "erroneously considered facts and hypothetical facts not in evidence as well as facts, hypothetical facts and hypothetical possibilities not contemplated nor included in the parties stipulation of uncontroverted facts." Appellants premise their foregoing contention based on a letter written by the trial judge to party counsels, after submission of post-trial briefs, but prior to the trial judge's entry of judgment. *See infra.* In its letter, the trial court generally outlined its reasoning and conclusions drawn from the stipulations of the parties at trial. Additionally, the trial court wrote that:

> While legal definitions are important, I think that the most persuasive argument made in this case was the School District's argument in its reply brief. There, they argued that a strict application of the dollar value criteria as urged by [Appellants], could produce absurd results. They posed the hypothetical of a roof damaged by a windstorm. If the value exceeded $12,500.00 they would have to get architect and engineer plans and specifications, advertise the project for two weeks, and then wait for the contractor to be available to do the work. This could conceivably mean a thirty day or longer period in which a school would have to put up with a leak in the roof. This could conceivably create other kinds of damage and all kinds of havoc for the people who had to use that school. If I were to apply a strict dollar value interpretation as requested by [Appellants], there would be absolutely nothing that would prevent that scenario from becoming reality.

■ In our review of the foregoing remarks, we are not convinced that the trial court's gratuitous remarks unfairly prejudiced Appellants. *See* Rule 84.13(b), Missouri Court Rules (1998). First, it is clear that the trial court based its remarks on Respondent counsel's arguments con-

tained in a posttrial brief submitted to the trial court. Second, the judgment makes no reference to these remarks and, instead, recites the parties' joint stipulations regarding the facts submitted to the trial court for its consideration and renders judgment accordingly. Third, as previously set out, since this case was submitted on stipulated facts, the only question for our review is whether the trial court drew correct legal conclusions from the facts that were stipulated. *Hay,* 902 S.W.2d at 851. We are constrained to affirm the trial court's judgment if the result reached is correct on any tenable basis. *Id.* at 852. Additionally, in a declaratory judgment case "we do not need to agree with the reasoning of the trial court in order to affirm the result." *McDermott,* 934 S.W.2d at 287; *see also Graue v. Missouri Property Ins. Placement Facility,* 847 S.W.2d 779, 782 (Mo. banc 1993)(a bench tried judgment which reaches the correct result will not be set aside even if the trial court gives a wrong or insufficient reason for its judgment). As noted by our review of Appellants' first point, we have determined that the trial court did not err in its decision. Point denied.

The judgment is affirmed.

## PER CURIAM, concurring.

I concur in the result in this case. However, in my opinion, the language of § 177.086 is clear and unambiguous. As such, this Court should give effect to the language as written without resorting to statutory construction. According to § 1.090, "Words and phrases shall be taken in their plain or ordinary and usual sense . . . ."

The phrase in question is "construction of facilities." The principal opinion recognizes this phrase as the operative language but also unnecessarily resorts to construing the single word "construction" as that word is used in chapter 290.

In my view, taking "construction of facilities" in its plain, ordinary and usual sense leads to only one conclusion—a school dis-

trict is not required to publicly advertise for bids unless contemplating expending over $12,500 for the construction of a facility not previously in existence.

Construct means to "build." MERRIAM WEBSTER COLLEGIATE DICTIONARY 248 (10th ed.1995). "Facility" means "something (as a hospital) that is built . . . ." *Id.* at 416. Repairing a roof, regardless of its cost, is not synonymous with constructing a facility. A roof cannot be repaired without an existing facility underneath it.