UTILITY SERVICE CO., INC., Respondent,

v.

The DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, and the Labor and Industrial Relations Commission of Missouri, Appellants.

No. SC 90963.

Supreme Court of Missouri, En Banc.

March 1, 2011.

Jeremiah J. Morgan, attorney general's office, Jefferson City, for Appellants.

Charles Hatfield, Tricia A. Workman, Jeremy A. Root, Stinson Morrison Hecker LLP, Jefferson City, for Respondent.

MARY R. RUSSELL, Judge.

At issue in this case is whether Missouri's Prevailing Wage Act (the Act), sections 290.210 to 290.340, RSMo 2000,[1] ap-

1. All statutory references are to RSMo 2000, unless otherwise indicated. One section of the Act, section 290.250, has been amended

plies to the contracted work performed on a city's water storage tank and tower. The contractor maintains that the work is "maintenance work" that is exempt from coverage under the Act. The Missouri Department of Labor and Industrial Relations ("the Department") asserts that the work at issue is "construction" that is subject to the Act. The trial court found in favor of the contractor, and the Department appeals.[2] This Court finds that the contracted work at issue is "construction" under the terms of the Act, and the trial court's judgment is reversed.

## I. Background

Monroe City entered into a "Water Tank Maintenance Contract" with Utility Services, Inc. (Contractor) for work on the City's elevated water storage tank and tower. In relevant part, the contract provided:

This agreement outlines the Company's responsibility for the care and maintenance of the [City's] water storage tank. Care and maintenance shall include the following:

The Company will annually inspect and service the tank....

... [T]he tank will be completely drained and cleaned.... After cleaning is completed, the interior will be thoroughly inspected and disinfected....

The Company shall furnish all specialized services including engineering and inspection services needed to maintain and repair the tank and tower.... These repairs include steel replacement, steel parts, expansion joints, water level indicators, sway rod adjustments, manhole covers/gaskets, and other component parts of the tank or tower.

The Company will clean and repaint the interior and/or exterior of the tank at such time as complete repainting is needed....

....

The Company will install an anti-climb device on the access ladder to prevent unauthorized persons from climbing the tower.

A lock will be installed on the roof hatch of the tank....

The Company will provide emergency service to handle any problems....

The Company will furnish relief valves, if needed, to install in the water system so the [City] can pump direct and maintain water pressure while the tank is being serviced.

This case arose after Contractor and the Department disagreed whether payment of prevailing wages was required for the contracted work.

The Act declares "that a wage of no less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed shall be paid to all workmen employed by or on behalf of any public body engaged in public works exclusive of maintenance work." Sec. 290.220. The Act further provides: "Not less than the prevailing hourly rate of wages ... shall be paid to all workmen employed by or on behalf of any public body engaged in the construction of public works, exclusive of maintenance work." Sec. 290.230.1 (emphasis added).

Contractor sought a written statement from the Department outlining whether Contractor was required to pay prevailing

since 2000, and it can be found in RSMo Supp.2010.

2. This Court took transfer of this case after its disposition by the court of appeals. Jurisdiction is vested in this Court pursuant to article V, section 10 of the Missouri Constitution.

wages for its annual inspections, painting, and welding repairs for the water storage tank. Contractor maintained that the contracted work was exempt from the prevailing wage requirements because it was "maintenance work" as defined in section 290.210(4), which provides: " 'Maintenance work' means the repair, but not the replacement, of existing facilities when the size, type or extent of the existing facilities is not thereby changed or increased."

The Department, however, contended that the contracted work required payment of prevailing wages because it was "construction" as defined in section 290.210(1), which provides: " 'Construction' includes construction, reconstruction, improvement, enlargement, alteration, painting and decorating, or major repair."

In a letter to Contractor, the Department highlighted the statutory definitions of "maintenance work" and "construction," and declared:

> The annual, or periodic, inspection of a water tank would not be considered covered construction under the [Act]. However, painting and welding of a tank would be considered covered construction subject to the [Act's] requirements. Painting is specifically listed under the definition of "Construction" and welding repairs would be considered an improvement and/or major repair.

Contractor responded that it believed that the contracted work was "maintenance work" because it did not change the size, type, or extent of the existing water storage tank or tower. It classified its work as "routine maintenance ... as necessary." Contractor also asserted that the inclusion of painting in the statutory definition of "construction" was meant to ensure payment of prevailing wages on new construction projects. It argued that painting on an unchanged, existing facility is "maintenance work" under the terms of the Act.

The Department again informed Contractor that the contracted work required payment of prevailing wages because it "amounts to the reconstruction of the water tower, as well as its painting, both of which bring [the] work within the definition of 'construction' " under the Act. The Department also noted that "improvement," "alteration," and "major repair" work was covered within the definition of "construction" in section 290.210(1). The Department further stated: "[O]ne factor that will cause particular work to fall into the 'major repair' category is whether the work requires the replacement of major constituent parts of the public work on which the workers are providing labor."

Contractor eventually filed a petition for declaratory judgment against the Department, seeking a declaration that the contracted work was "maintenance work" exempt from the Act. The parties filed cross motions for summary judgment, and the trial court entered judgment in favor of Contractor. The trial court found that the contracted work did not require payment of prevailing wages because it was "maintenance work" in that it did not increase or change the size, type, or extent of the existing water storage tank or tower. The Department appeals.

## Standard of Review

Because appellate review of summary judgment is *de novo*, determining whether the judgment in this case was proper requires consideration of the same factors the trial court assessed when issuing the judgment in Contractor's favor. *See ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts

as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.* at 381–82.

In deciding whether the work under the contract is subject to prevailing wages, this Court must look to the language of the Act as a guide. *See United Pharm. Co. of Mo., Inc. v. Mo. Bd. of Pharm.*, 208 S.W.3d 907, 909 (Mo. banc 2006). Statutory analysis requires ascertaining the intent of the legislature, as expressed in the words of the statute. *Id.* Statutory language is given its plain and ordinary meaning. *Id.* at 910. Rules of statutory construction may be applied to resolve any ambiguities if the legislative intent is undeterminable from the plain meaning of the statutory language. *Id.* Each word, clause, sentence, and section of a statute is given meaning. *Neske v. City of St. Louis*, 218 S.W.3d 417, 424 (Mo. banc 2007). No portion of a statute is read in isolation, but rather is read in context to the entire statute, harmonizing all provisions. *Id.*

Because the Act is a remedial statute intended to prevent payment of substandard wages for work on public works projects,[3] it "should be construed so as to meet the cases which are clearly within [its] spirit or reason . . . or within the evil which it was designed to remedy, provided such interpretation is not inconsistent with the language used." *State ex rel. LeFevre v. Stubbs*, 642 S.W.2d 103, 106 (Mo. banc 1982) (internal quotations omitted). Doubts about the applicability of a remedial statute are resolved in favor of applying the statute. *See id.* Accordingly, exceptions or exclusions to a remedial law are narrowly construed. *Cf. id.; State v. Breckenridge*, 219 Mo.App. 587, 282

S.W. 149, 150 (1926) ("As a rule, exceptions in statutes are strictly construed.").

### "Construction" & "Maintenance Work" Under The Prevailing Wage Act

The issue in this case is whether the contracted work falls under section 290.210(1)'s definition of "construction," which requires payment of prevailing wages.

Section 290.210(1) provides a broad definition of "construction" that "includes construction, reconstruction, improvement, enlargement, alteration, painting and decorating, or major repair." Contractor argues that the application of this definition is limited by the definition of "maintenance work" under section 290.210(4). Contractor contends that work is "maintenance work," not "construction," if it is "the repair, but not the replacement, of existing facilities when the size, type or extent of the existing facilities is not thereby changed or increased."

Although the parties apparently concede that some quantitative value of work transforms "maintenance work" to "construction," no statute provides a guide for assessing the magnitude of work that requires payment of prevailing wages for "construction" work under section 290.210(1). Without such statutory guidance, this Court considers the Department's interpretation and construction of the Act. *See Foremost–McKesson, Inc. v. Davis*, 488 S.W.2d 193, 197 (Mo. banc 1972) (noting that "[t]he interpretation and construction of a statute by an agency charged with its administration is entitled to great weight"). The Department's regulations relating to the Act "should not be

---

**3.** *See* sec. 290.220; *Long v. Interstate Ready–Mix, L.L.C.*, 83 S.W.3d 571, 574 (Mo.App. 2002).

judicially invalidated except for weighty reasons and are to be sustained unless unreasonable and plainly inconsistent with the [statutes]." *See Purler–Cannon–Schulte, Inc. v. City of St. Charles,* 146 S.W.3d 31, 47 (Mo.App.2004) (internal quotations omitted).

### Application of 8 CSR 30–3.020

The Department's promulgation of 8 CSR 30–3.020 in 1990 outlined "a refinement of the statutory definition of 'construction'" in that it "define[d] the term 'major repair'... to mean *'repair of an existing facility* ... where the amount of repair involves twenty percent (20%) or more of the ... existing facility.'" *State, Dep't of Labor & Indus. Relations v. Bd. of Pub. Utils. of City of Springfield,* 910 S.W.2d 737, 744 (Mo.App.1995) (citing with emphasis 8 CSR 30–3.020(2) (original rule filed Aug. 24, 1990, effective April 29, 1991)). In *Public Utilities,* however, the court of appeals struck down this regulation after finding it was contrary to the language defining "maintenance work" under section 290.210(4), which includes the phrase "repair of an existing facility." *Id. Public Utilities* stated:

> Sections 290.210(4), 290.220, and 290.230(1) provide that *any* 'repair ... of existing facilities' is work excluded from the Act, *provided* that the 'repair ... of existing facilities' does not change or increase 'the size, type or extent of the existing facilities.' Thus, the test to be applied for 'maintenance work' is not

the magnitude of the repair; rather, it is whether a change or increase in the size, type, or extent of the existing facility is wrought by the repair. *The clear inference is that the legislature did not intend that a test for magnitude be used to determine the Act's applicability.*

*Id.* (emphasis added).

After *Public Utilities,* however, the Department promulgated a new version of 8 CSR 30–3.020. The new regulation provides in relevant part:

> The term construction of public works generally includes construction activity as distinguished from manufacturing, furnishing of materials or servicing and maintenance work. The term includes, *without limitation,* the construction of buildings, structures and improvements of all types.... [And the term] also means all work done in the construction or development of a public works project, *including without limitation,* altering, remodeling, demolishing existing structures, installation on the site of the construction of items fabricated off-site, [and] painting and decorating....

8 CSR 30–3.020(1) (filed July 17, 1995, effective Jan. 30, 1996) (emphasis added).[4]

■ Particularly because the statutes provide no quantitative instructions for applying the Act, the "without limitation" language in this current version of 8 CSR

---

4. Comparatively, the Department's *Division of Labor Standards Information Series,* publication LS–13–2 (08–07) AI, provides an answer to the inquiry "What is the difference between major repair and maintenance?" by stating:

> .... Repairs done by overhaul or replacement of major constituent parts that have deteriorated are 'major repairs.'.... Maintenance is recurrent, day-to-day, periodic or scheduled work unless it involves the over-

haul or replacement of major constituent parts. If work involves the repair but not the major repair or replacement of existing facilities, and the size, type or extent of the existing facilities is not changed, it is maintenance.

Missouri Department of Labor & Industrial Relations, *Division of Labor Standards Information Series,* http://www.labor.mo.gov/DLS/Forms/13–AI.pdf.

30–3.020 is instructive.[5] Where the Act is silent or ambiguous on an issue, the Department has the power to form policy and make necessary rules to fill gaps left by the legislature. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (discussing that an administrative agency has the power to form policy and make necessary rules when statutes are silent or ambiguous on an issue; noting that the court reviews the agency's rule to determine if it is "based on a permissible construction of the statute"). Contrary to the arguments made by the parties, it is not this Court's role to provide quantitative boundaries for applying the Act.[6]

Comparing the definitions for "construction" under section 290.210(1) and "maintenance work" under section 290.210(4) by those statutes' respective terms, this Court disagrees with *Public Utilities*'s suggestion that work on an existing facility is "maintenance work" unless it changes the size, type, or extent of the facility. Because "maintenance work" is exempt from coverage under the Act, its definition must be read narrowly. Accordingly, the limitation in the definition of "maintenance work"—which tests whether work changes the size, type, or extent of an existing facility—is a limitation that cannot be applied in a way that reduces the scope of what is "construction" under the plain meaning of section 290.210(1). The plain meaning of the terms included in the definition of "construction" under section 290.210(1) encompasses work that can occur without any change to a facility's size, type, or extent.

Further, contrary to Contractor's suggestions, nothing in the definition of "construction" under section 290.210(1) prevents the application of the statute to work performed on an existing facility. No other statute or regulation instructs that "construction" under section 290.210(1) is limited to work performed on new public works projects. By its defining terms, "construction" work under section 290.210(1) can include work performed on new or existing facilities. For example, the definition of "construction" includes *"reconstruction,"* which necessarily must be accomplished on something in existence.

Particularly in light of 8 CSR 30–3.020(1), any work that is encompassed in the plain meaning of the language defining "construction" under section 290.210(1) is work that requires payment of prevailing wages, regardless of whether the work changes the size, type, or extent of an existing facility.

### The Contracted Work Is "Construction"

Having determined that any work within the plain meaning of the language defining "construction" under section 290.210(1) is work that requires payment of prevailing wages, this Court must now assess the nature of the contracted work at issue in this case. Considering the contracted work in relation to the plain meaning of

---

5. Confusingly, the Department argues that the contracted repairs in this case are "major repairs" because their costs represent nearly 25 percent of the total costs for a new water storage tower and tank. But this cost percentage argument is not helpful because no bright-line regulatory or statutory directive based on a cost value instructs when the Act applies.

6. Contractor makes a valid point that the current statutory language and regulations cause confusion. Particularly it faults the Department for failing to promulgate bright-line tests for applying the Act. This Court, however, cannot create the Department's regulations or rewrite the statutes enacted by the legislature. Many of Contractor's arguments in this case raise "slippery slope" concerns that are best remedied through actions of the other branches of government.

the terms included in the definition of "construction" under section 290.210(1), more than one defining term under that statute applies to the contracted work.

One of the terms in section 290.210(1)'s definition of "construction" is "reconstruction." "Reconstruct" means "to construct again: as ... to build again [rebuild] ... to make over [repair]." WEBSTER'S THIRD NEW INT'L DICTIONARY UNABRIDGED 1897 (1993). To "rebuild" means "to restore to a previous state or condition." *Id.* at 1893. "Reconstruction" is "something reconstructed: as ... something reassembled (as from parts) *into its original* form or *appearance.*" *Id.* at 1898 (emphasis added). The contracted work includes "reconstruction" insofar as it involves restoration and remodeling. Such "reconstruction" work listed in the contract includes "repairs includ[ing] steel replacement, steel parts, expansion joints, water level indicators, sway rod adjustments, manhole covers/gaskets, and other component parts of the tank or tower."

Another term in the statutory definition of "construction" in section 290.210(1) is "improvement." "Improvement" includes "the act or process of improving: as ... the enhancement or augmentation of value or quality: an increasing of ... excellence, or desirability." WEBSTER'S THIRD NEW INT'L DICTIONARY UNABRIDGED 1138. And *Black's Law Dictionary* defines an "improvement" as "[a]n addition to real property, whether permanent or not; esp[ecially] one that increases its value or utility or enhances its appearance." 826 (9th ed.2009). The contracted work includes "improvements" that satisfy the definition of "construction" under section 290.210(1),

in particular, the replacement of major parts and the installation of an anti-climb device.

The term "alteration" is also included in the definition of "construction" under section 290.210(1) and encompasses work at issue under the contract. An "alteration" can be "a change or modification made on a building that does not increase its exterior dimensions." WEBSTER'S THIRD NEW INT'L DICTIONARY UNABRIDGED 63. Replacement of major parts as provided in the contract is a "change or modification" that has no impact on the dimensions of the water tower or storage tank.

The definition of "construction" under section 290.210(1) also includes "painting." And, to the extent that repainting is inherently "painting," the contracted work includes "painting" as the term is used in section 290.210(1). The Department's brief concedes that "minor touch-up paint[ing] may be insufficient to satisfy" the reference to "painting" in section 290.210(1). But there can be no dispute that the work under the contract in this case is not minor touch-up painting. Instead, the contract provides for complete repainting of the interior and exterior of the water storage tank and tower.[7]

Finally, the contract encompasses "major repairs" included in the definition of "construction" under section 290.210(1). "Major" is a reference to something that is "greater in number, quantity, or extent: [larger] ... [or showing] marked increases ... notable or conspicuous in effect or scope." WEBSTER'S THIRD NEW INT'L DICTIONARY UNABRIDGED 1363. The statutes and

---

7. As discussed above, the quantity of work that transforms painting from minor touch-up painting to "painting" within the definition of section 290.210(1) is a question that is left to the Department's regulations and discretion, as nothing in the statutes provides a magni- tude test for what amount of "painting" is "construction." It is not the Court's role to create a standard setting the number of brush strokes that requires the application of prevailing wages.

regulations do not provide a quantitative guide to settle the dispute in this case about what amount of work should be deemed a "repair" under the "maintenance work" definition set forth in section 290.210(4) as opposed to a "major repair" that is included within the definition of "construction" under section 290.210(1). But, as detailed above, the Act cannot be read to mean that repairs are classified as "maintenance work" unless they change a facility's size, type, or extent. Such an interpretation would undermine the inclusion of the term "major repair" in the definition of "construction" under section 290.210(1). A "repair" that is "maintenance work" under section 290.210(4) must be considered something less than a "major repair" under section 290.210(1). But a "repair" that is "maintenance work" under section 290.210(4) is something that is not "construction, reconstruction, improvement, enlargement, alteration, painting and decorating, or major repair" pursuant to section 290.210(1). In this case, the contract encompasses "major repairs" under section 290.210(1) in that it provides for the replacement of major component parts, particularly after "severe pitting or steel loss" damages occur.

Because the contracted work in this case fits within terms defining "construction" under section 290.210(1), the trial court erred in determining the work was "maintenance work" for purposes of applying the Act.[8]

---

8. Also at issue in this appeal is whether the trial court wrongly applied the terms of the "maintenance work" definition under section 290.210(4) because it misinterpreted the term "facilities." The Department argues that the trial court failed to consider that the term "existing facilities" as used in section 290.210(4) can include the component parts of an existing public works project. Contractor, however, argues that the trial court did not err in applying the terms of the "mainte-

## Conclusion

For the foregoing reasons, the trial court's judgment is reversed.

All concur.

nance work" definition under section 290.210(4), particularly because the Department had agreed in this case that the facility at issue was the city's water storage tank and tower. Under the facts of this case, it is not necessary to explore the requirements of section 290.210(4) after having already determined that the contracted work is "construction" subject to prevailing wages pursuant to the terms of section 290.210(1), regardless of the interpretation of the term "facilities."